GEORGE BAMFORD vs. G. H. HAMMOND COMPANY.

Suffolk.    January 18, 1906. — May 16, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & SHELDON, JJ.

*Negligence*, Employer's liability.   *Ship.*

The hatches of a vessel are not part of the ways, works or machinery of a shipper engaged in loading the vessel with meat.   Following *Hyde* v. *Booth*, 188 Mass. 290.

An order given by a superintendent to a man at a winch to hoist must be interpreted as an order to hoist in a proper way.

There is no duty on the part of a corporation engaged in shipping beef to warn an experienced workman accustomed to loading vessels with meat that the ladder hatch on the deck of a vessel will have to be taken off to enable some of the workmen to go into the hold to pack away the beef.

In an action by a workman in the employ of a corporation engaged in shipping beef and other meats against his employer for injuries caused by his falling into the open part of a hatchway of a vessel on the closed part of which he was standing, when stepping backward to avoid a run or skid which swung while being hoisted, it appeared that the plaintiff was an experienced workman accustomed to loading vessels with meat, that the rest of the workmen were on the deck where there was plenty of room, that the opening into which the plaintiff fell had been left by two of his fellow workmen who had taken off one of the planks of the hatchway so that they could go below by a ladder which was there, and had not replaced it because one of the men who was to go below was still on deck, that the usual order to hoist was given, preceded by a warning from the superintendent in charge for the men to get out of the way, that the plaintiff had been ordered by another superintendent on the pier " to go ahead up and help get the runs in," that when he got on the deck of the vessel he stepped up on to the covered part of the hatchway, the coaming of which was from twelve to sixteen inches above the deck, that he noticed that one half of the other side of the hatchway was uncovered, but did not notice that the ladder hatch was open, that he noticed that the men were putting a chain around the run to hoist it, and that then the order was given to the man at the winch to hoist and the run came up and swung and pressed against him but did not hit him.   *Held*, that, even assuming that the plaintiff was in the exercise of due care in being on the hatch instead of on the deck, there was no evidence of negligence on the part of the defendant's superintendent whose order to hoist must be interpreted as an order to hoist in a proper way, and that there was no duty on the part of the defendant to warn a man of the plaintiff's experience that the ladder hatch would have to be taken off to enable some of the workmen to go into the hold to pack away the beef.

LATHROP, J.   This is an action of tort for personal injuries sustained while in the defendant's employ.   The declaration contains three counts.   The first and second are under the R. L.

c. 106, § 71, cls. 1 and 2, respectively, and the third is at common law. At the close of the evidence for the plaintiff, the judge directed a verdict for the defendant, and by the agreement of the parties reported the case for determination by this court. If upon the evidence the jury would have been warranted in finding a verdict for the plaintiff on any count, judgment was to be entered for the plaintiff in the sum of $1,500, and costs; otherwise, judgment was to be entered on the verdict for the defendant.

The report is a long one, but the facts as shown by the evidence may be stated briefly. The defendant is a corporation engaged in the shipping of beef and other meats. Before and at the time of the injury, which happened on December 2, 1902, about half past six in the afternoon, it shipped one or two ship loads of beef a week. The plaintiff had been in the employ of the defendant about eighteen months with a gang of about thirty-eight men. Most of his work was on the pier in carrying meat to vessels two nights in the week. He had worked for seven or eight years before that in packing away beef on vessels. His evidence shows that he was a man of experience and knew all about the business.

The accident was caused by his falling down an open space in the ladder hatchway on board the steamship Armenian, while stepping backward to avoid a run or skid which swung while being hoisted, and, as he testified, pressed against him but did not hit him.

The plaintiff was ordered to go aboard the vessel by one Waterhouse, who had charge of the men on the pier, while one Bruce had charge of the men on the vessel. The order to the plaintiff was "to go ahead up and help get the runs in." When he got on the deck of the vessel he stepped up on to the covered part of the hatchway. He noticed that one half of the other side of the hatchway was uncovered, but did not notice that the ladder hatch was open. He noticed that the men were putting a chain around the run to hoist it to get it out of the way. Then the order was given to the man at the winch to hoist, and the run came up and swung as above mentioned.

The hatch was about fifteen feet long, and about twelve to thirteen feet wide. There was a beam which ran across amid-

ships in the centre, which was the main beam.    There were also two small beams, one of which ran from aft to the centre beam and the other from the centre beam to the fore part of the hatch.    Planks about four or four and a half feet long, two feet wide, and three inches thick were used to cover the hatch.    The coaming of the hatch was twelve to sixteen inches above the deck.

Two of the plaintiff's fellow servants had taken off one of the planks so that they could go below by the ladder, and had not replaced it, as one of the men who was to go below was still on deck.    It was down this hatch that the plaintiff fell.

We assume for the purposes of the case that there was evidence that the plaintiff was in the exercise of due care, though no explanation is offered as to the reason he was on the hatch instead of being on the deck where the rest of the men were, and where the evidence shows there was plenty of room.

The plaintiff cannot recover on the first count, for there was no evidence of any defect in the ways, works and machinery. Nor did the ways, works and machinery belong to the defendant, but all belonged to the steamship.    *Hyde* v. *Booth*, 188 Mass. 290.

Nor do we see any negligence on the part of the superintendent.    There was nothing to show that the chain was fastened about the skid in any manner but the usual one, or that it was hoisted in an unusual way.    If the man at the winch hoisted it too quickly, that was the negligence of a fellow servant of the plaintiff.    It appears that the usual order to hoist was given, preceded by a warning from Bruce for the men to get out of the way.    The order to hoist can be interpreted only as an order to hoist in a proper way.    *Gouin* v. *Wampanoag Mills*, 172 Mass. 222.    *Desautels* v. *Cloutier*, 189 Mass. 349.    If it was the duty of the men to guide the skid as it arose, and they neglected to do it, that was the fault of the fellow workmen of the plaintiff.    No one can read the evidence without being satisfied that there was nothing unusual on the steamship that night except the fact that the plaintiff chose to get up on the hatch.

While in a sense the place where the plaintiff was put to work was a dangerous place, yet to a man of his experience, there was no necessity of giving any warning.    He knew all that any one

could have told him to look out for.   He knew that beef was to be put into the hold and that some of the men would have to go there to pack away the beef, and would have to take off the ladder hatch.   On all the evidence in the case we fail to find any breach of duty which the defendant owed the plaintiff.   *Mellen* v. *Wilson Sons & Co.* 159 Mass. 88.

*Judgment on the verdict for the defendant.*

*H. P. Brown,* for the plaintiff.

*C. S. Knowles,* (*W. B. Sprout* with him,) for the defendant.