WILLIAM H. HODDE, JR. *vs.* ATTLEBORO MANUFACTURING COMPANY.

Bristol.   October 22, 23, 1906. — November 27, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Negligence,* Employer's liability. *Evidence,* Remoteness.

In an action by a boy employed by a manufacturer of jewelry against his employer for personal injuries, there was evidence that the plaintiff was about nineteen years of age and was not of average intelligence, that he was sent by one H. in the employ of the defendant to fetch some liquid called " dip " from a large crock standing in the yard of the factory, that the liquid was composed of oil of vitriol, nitric acid and muriatic acid, that it was heavier than water and made slippery everything dipped into it, that the plaintiff did not know what the mixture was composed of or contained and was not instructed by any one as to its dangerous character or told to look out for it, that he was given a pitcher which would hold about half a gallon and also a little pitcher from which the handle had been broken off, and was told to " take this pitcher and go down and get dip ; and take that little pitcher beside it and put it in this pitcher," that he went down and set the larger pitcher on the ground beside the crock and took up the little pitcher and dipped it in the crock until it was pretty nearly full, that as he was " bringing it up " it was heavy and slipped out of his hand, and the liquid splashed into his face and eyes causing the injuries sued for, that it had become a part of the plaintiff's duty to do errands, that the foreman in the department, where the plaintiff worked as a scratcher of silver and on a foot press, had told the plaintiff to do as H. wanted him to and on two occasions before the accident had directed H. to ask the plaintiff to go or himself had sent the plaintiff with H. when H. went to the yard for dip, but that the plaintiff on these occasions had had nothing to do with bailing out the dip and that H. did not tell him about it or give him any instructions. *Held,* that there was evidence that the plaintiff did not assume the risk of the accident, evidence of due care on the part of the plaintiff, and evidence of negligence on the part of the defendant in failing to instruct the plaintiff properly and in providing him with a pitcher without a handle to dip the mixture from the crock ; *also,* that there was evidence that the plaintiff at the time of the accident was acting within the scope of his employment.

In an action by a boy employed by a manufacturer of jewelry against his employer for personal injuries alleged to have been caused by a dangerous acid splashing in the plaintiff's face and eyes when he was sent without proper instructions and with unsuitable appliances to fetch some of it in a pitcher from a large jar standing in the yard of the factory, the defendant contended that the accident was caused by the plaintiff tipping the large jar a little and then slipping, and dropping the jar so that the acid splashed in his face. The defendant put in evidence the deposition of the person in its employ who sent the plaintiff for the acid and who testified that it was about ten or fifteen minutes after the plaintiff was injured when he saw the jars containing acid and those used in transporting it. The following questions and answers in the deposition, on objection by the plaintiff, were excluded by the judge: " What was the location and condition of the jars referred to when you first saw them after the plaintiff was injured ? The jar had been moved about two or three inches. Was there any acid after the accident in the pitcher that the plaintiff carried down with him before the accident ? There was not." A witness for the defendant, who testified that he saw the jars about twenty minutes or half an hour after the accident, said on his cross-examination that for all he knew a dozen or more persons might have gone into the yard from the time the plaintiff was injured up to the time he saw the jars. The defendant made no offer to show that the condition of things had not changed between the happening of the accident and the time referred to in the questions and answers excluded. *Held*, that, although the interval was short, this court could not say that the likelihood that other persons might have gone to the jar for acid was so slight that the exclusion of the evidence was a wrongful exercise of the discretion of the presiding judge.

MORTON, J. The plaintiff was injured while in the defendant's employment by the splashing up into his face and eyes of a mixture composed of oil of vitriol, nitric acid, and muriatic acid from a large crock standing in the yard of the defendant's establishment * from which he had been sent to fetch some, and this is an action to recover for the injuries so sustained. The jury found for the plaintiff and the case is here on the defendant's exceptions.

The defendant contends that the plaintiff was not in the exercise of due care, that he assumed the risk, that he was not acting within the scope of his employment and that the judge erred in excluding certain evidence.

Whether the plaintiff was in the exercise of due care and assumed the risk depends on what knowledge and experience he had of the dangerous character of the mixture. He testified in substance that he did not know what the mixture was composed of or contained, and was not instructed by any one as to its dan-

* The defendant was a corporation engaged in the manufacture of jewelry.

gerous character or told " to look out for it." He was the only witness to the accident and his statement as to how it occurred was that he was sent down by one Hall after "dip," as the mixture was called, and was told to " take this pitcher and go down and get dip; and take that little pitcher beside it and put it in this pitcher "; that he took the pitcher, which he should judge would hold half a gallon, and went down and set it on the ground and took up the little pitcher and dipped it into the " big crock " and " got it pretty near full. As I was bringing it up, it was kind of heavy, it slipped out of my hand and went down and splashed up in my face and eyes." There was testimony tending to show that the mixture was heavier than water, and rendered anything dipped into it slippery, and that the little pitcher, which was the only thing furnished to dip with, had no handle. The plaintiff had been down once or twice with Hall, but, as he testified, " had nothing to do with bailing out the dip," and " he did not tell me anything about it or give me any instructions." The plaintiff was nineteen years old or thereabouts but there was testimony tending to show that he was not of average intelligence. We do not see how upon this evidence it could have been ruled as matter of law that the plaintiff was not in the exercise of due care, or that he assumed the risk. There was much contradictory evidence from the cross-examination of the plaintiff and other sources tending to impeach the plaintiff's credibility, but it was for the jury to say what the facts were and where the truth lay. If the jury believed the plaintiff there was not only evidence of due care on his part and non-assumption of the risk, but of negligence on the part of the defendant in failing to properly instruct him and in providing a pitcher with a broken handle to dip the mixture from the crock.

The ground on which the defendant contends that the plaintiff was acting outside of the scope of his employment is that he was employed as a scratcher on silver and afterwards set to work on a foot press and that getting acid was not a part of his duty at either of those jobs. But there was testimony tending to show that it became a part of his work to do errands during the last two weeks, that the foreman of the department where he worked told him to do as Hall wanted him to and had directed Hall to

ask him to go or had himself sent him down with Hall on two occasions before the accident. If believed this evidence plainly warranted a finding that the plaintiff was acting within the scope of his employment at the time of the accident.

The remaining exception is to the exclusion of the answer to the 36th and 39th interrogatories in the deposition of Hall who sent the plaintiff down to get the acid. The interrogatories were as follows: "Int. 36. What was the location and condition of the jars referred to in the last interrogatory, namely, when you first saw them after William H. Hodde was injured?" "Int. 39. Was there any acid after the accident in the pitcher said Hodde carried down with him before the accident?" The answer to the first interrogatory was "The jar had been moved about two or three inches," and to the second "There was not." The defendant's theory as to the way in which the accident happened was that "the plaintiff bent over and tipped the large jar a little, and then slipped and dropped the jar, whereupon the acid splashed up into his face" and its contention is that the evidence that was excluded tended to support this theory. It may well be doubted whether if the evidence had been admitted it would have affected the result, and therefore whether the defendant was harmed by its exclusion. But the evidence was unaccompanied by any offer to show that the condition of things had not changed between the happening of the accident and the time to which the observation of the witness related. And though the interval was short,* we cannot say that the likelihood that other persons might have gone to the crock for acid was so slight that the presiding judge was not warranted in the exercise of his discretion in excluding the evidence. *Powers* v. *Boston & Maine Railroad*, 175 Mass. 466. One witness, called by the defendant, who had testified on direct examination that he "saw the jars in the yard, in about twenty minutes or half an hour after the accident," said in the course of the cross-examination that he did not know "how many persons may have gone into the yard from the time when the plaintiff was injured up to the time I went out for the acid, there may have been a dozen or more for all

---

* Hall testified that he should say it was about ten or fifteen minutes after the plaintiff was injured when he saw the jars containing acid and those used in transporting it.

I know," from which it might be inferred that persons very frequently went to the crock for acid and might have moved it.

We have considered only the exceptions which have been argued treating the others as waived.

The result is that the exceptions must be overruled.

*So ordered.*

*S. R. Spring,* for the defendant.

*J. J. Feeley,* (*R. Clapp* with him,) for the plaintiff.