DENNIS P. CRIMMINS *vs.* EDWARD S. BOOTH.

SAME *vs.* FREDERICK LEYLAND AND COMPANY (1900) LIMITED.

Suffolk.    December 9, 1908. — May 19, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Negligence,* Of owner of ship toward one employed by stevedore under contract with owner, Independent contractor, Employer's liability. *Ship. Contract,* Construction. *Words,* "Appliance."

Apart from contract, the duty at common law of the owner of a ship at a wharf toward an employee of a stevedore lawfully at work upon the ship is the same as that of an employer respecting the apparatus and the permanent constructions of the ship, with and upon which the employee is expected to work, even though he may be in the immediate employ of the stevedore as an independent contractor.

Where a stevedore makes a contract with the owner of a ship to load and unload it, the owner is liable to an employee of the stevedore who, while he was standing upon a hatch in the course of his duties, was injured by the hatch falling in because it was provided with insufficient flanges and coamings to hold it in place, if the employee did not know of such insufficiency and it was not obvious and could be ascertained only by an experiment, to perform which two men at least would be required, or by accurately measuring a five foot space.

A stevedore made with the owner of a ship a contract in writing for the loading and unloading of the ship by which it was provided that the stevedore should hire and pay the men necessary for the purpose and should "provide all necessary engines, fuel, lights, tackle and other appliances for the purpose" and should "have the sole and entire charge, control and direction of the work," that in performing the work in question "the stevedore has permission to use the ship's winches, booms, falls and tackle or any other appliances of the ship if he desires so to do, in such condition as he may find them in, on or over the ship's deck, the stevedore furnishing men to run them; but no obligation of any sort is assumed by the [owner] . . . or is to be implied from such permission . . . or otherwise to keep or have such winches, booms, falls and tackle or other appliances . . . in safe or fit condition for use . . . and this permission shall be construed as a mere license to the stevedore and his men to use at his or their own risk . . . any winch, boom, fall, tackle or other appliance that may happen to be on or over the ship's deck." An employee of the stevedore who had no knowledge of such contract was injured by the falling in of a hatch due to the insufficiency of the coamings and flanges upon which it rested. *Held,* that the contract did not by its terms or fair intendment include the hatches of the vessel in the "appliances" therein mentioned. *Whether,* if the contract had included the hatches among such appliances, it would have affected the rights of the employee who did not know of it, therefore was not determined.

The relation of the owner of a ship toward a stevedore and his employees engaged in loading or unloading it implies by inherent necessity an invitation on the part of the owner to such employees to use the hatches of the ship for such purposes,

and from such relation arises a duty on the part of the owner to call to the attention of the stevedore and his employees dangers in such use that are not obvious nor incident to the business, or to pay for the consequences of a failure so to do.

Where a stevedore makes a contract with the owner of a ship to load and unload the ship, and the contract provides that the stevedore is to have "the sole and entire charge, direction and control of the work," the stevedore becomes liable to his employees engaged in the work for injuries resulting from an insufficiency of the flanges and coamings of a hatch which was not obvious nor apparent upon reasonable inspection, and of which he might give warning to his employees. Distinguishing *Hyde v. Booth*, 188 Mass. 290.

Where a stevedore, who by the terms of a contract in writing with the owner of a ship has "the sole and entire charge, direction and control of the work" of loading and unloading the ship and is required to furnish all necessary lights, directs an employee, just before midnight on a dark night with no artificial light to assist in covering the hatches of the ship and, while doing as directed, the employee is injured by the falling in of a hatch upon which he was standing, due to an insufficiency of its flanges and coamings of which he did not know and which without a light he could not have discovered on inspection but which he might have discovered if sufficient light had been furnished, the stevedore is liable to his employee for his injuries thus received.

TWO ACTIONS OF TORT for personal injuries received by the plaintiff, a longshoreman in the employ of the defendant in the first case, while at work in the course of his employment putting the covers on the hatches of the Columbian, a vessel owned by the defendant in the second case. Writs in the Superior Court for the county of Suffolk dated respectively July 16, 1904, and April 10, 1906.

The cases were tried before *Richardson*, J. The facts are stated in the opinion. At the close of the plaintiff's evidence, the presiding judge ruled that on all the evidence the plaintiff was not entitled to recover against either defendant and therefore ordered a verdict for the defendant in each case. The plaintiff alleged exceptions.

*H. F. R. Dolan*, (*T. R. Bateman* with him,) for the plaintiff.

*J. Lowell & J. A. Lowell*, for the defendant Booth.

*A. D. Hill*, (*F. J. Sulloway* with him,) for the defendant company.

RUGG, J. These are two actions of tort to recover damages for the alleged negligence of the defendants. The declaration in the one against the Leyland Company contains a single count averring liability at common law for providing an unsafe place in which the plaintiff was rightfully at work. It contains no count based upon R. L. c. 106, § 76. The declaration in the

action against Booth contains one count alleging negligence at common law and two others based respectively upon the first and the second clauses of R. L. c. 106, § 71.

The plaintiff was a longshoreman in the employ of Booth, a stevedore, and was working upon the Columbian, a vessel owned by the Leyland Company. On the day of the accident he had been helping to load the vessel. Just before midnight he, with others, was directed to stop work and put on the hatches. The hatches, made of wooden planks, were about five feet long, two feet wide, three inches thick, and were each so heavy that two men were required to handle them. The hatchway itself was about fourteen feet long by ten feet wide, surrounded by an iron frame called the coamings. When the hatch was to be put on, there was first placed across the middle of the hatchway an iron beam called the thwartship piece, and on its middle two other iron beams rested, called fore and aft pieces, one reaching to the middle of the forward coamings and the other to the middle of the aft coamings. These three beams fitted in sockets, and on both sides of the fore and aft pieces were flanges two to two and one half inches in width, and on the inside of both the inshore and offshore coamings were flanges one to one and one half inches in width. It was the customary, and the only practicable way, after the first hatch was put on, for one man to stand on it and successive hatches in placing the next. The night of the accident was dark and a canvas suspended from a boom over the hatchway came down within two or three feet of the deck and covered the whole hatchway except for an opening where the cargo was taken in. There was no light on the deck. The plaintiff with others was putting down the hatches, his post of duty requiring him to stand on the hatches as they were successively placed. As he was standing on the fourth or fifth hatch and helping to put the next one in position, the one on which he was standing went down and he sustained thereby the injuries for which in these actions he seeks recovery. There was sufficient evidence to support a finding that the hatches were being put down in the same order and places in which they were when the ship came into port, and there was no evidence which compelled the conclusion that they were being placed in any way other than that

for which they were supplied by the defendant shipowner. The next morning after the accident the officers of the vessel and the defendant Booth and others tested the hatch that went down with the plaintiff on it. It then appeared that when pressed hard against the coamings (where the flange was one to one and one half inches wide) it would hold, but when pressed against the fore and aft piece (where the flange was two to two and one half inches wide) the hatch cleared the flange on the coamings by about one half inch and would go down. It does not appear that the plaintiff had had anything to do with these hatches before the accident except that he helped to put hatches upon the same hatchway at six o'clock on the night of his accident.

The defendant Booth was doing the work of loading and unloading the Columbian under a contract with her owner, from which this extract was in evidence:

" The said stevedore agrees to discharge and load each of the said steamships at the stated rates promptly upon her arrival in Boston. 'Said stevedore agrees to hire and pay the necessary men for the purpose, to provide all necessary engines, fuel, lights, tackle and other appliances for the purpose, and shall have the sole and entire charge, direction and control of the work; (the work, however, is to be done to the satisfaction of Fred'k Leyland & Co. (1900) Ltd. and of the Owners of the steamers stated on the attached schedule) and the Steamship Company agrees to pay for discharging and loading the same at the rates specified, payment for the work on each ship to be made when each ship is loaded ready for sea. A sufficient number of men is to be provided by Mr. Booth whenever required and at his sole expense for docking and undocking the various steamers coming under this contract.

" There is to be no extra charge for rigging up to start the ship or for taking off hatches and putting them on again whenever required, neither is there to be any charge for handling cargo tents and stages used in discharging and loading.

" In loading and discharging the steamships in question, the stevedore has permission to use the ship's winches, booms, falls and tackle or any other appliances of the ship if he desires so to do, in such condition as he may find them in, on or over

the ship's deck, the stevedore furnishing men to run them; but no obligation or undertaking of any sort is assumed by the Steamship Company or its agents, or is to be implied from such permission to use or from the furnishing by the ship of the necessary steam or otherwise to keep or have such winches, booms, falls and tackle or other appliances or any of them at any time in safe or fit condition for use, or to have any winches, booms, falls and tackle or other appliances in any condition on or over the ship's deck, and this permission shall be construed as a mere license to the stevedore and his men to use at his or their own risk and discretion for the purposes aforesaid, any winch, boom, fall, tackle or other appliance that may happen to be on or over the ship's deck without any responsibility whatever on the part of the Steamship Company or its agents in respect to the fitness or safety of such winch, boom, fall, tackle or other appliance for such use or its condition in any respect at any time."

The plaintiff was not a party to this contract and did not know of its existence. Due notice under the employers' liability act was given to the defendant Booth. The presiding judge directed a verdict in favor of both defendants.

In the absence of any special contract governing the relation between a shipowner and stevedore, it seems to be settled that the hatchway and hatches are not a part of the ways, works and machinery of the stevedore. *Hyde* v. *Booth*, 188 Mass. 290. *Bamford* v. *G. H. Hammond Co.* 191 Mass. 479. Hatches are as much a part of the ship as doors are of a house. It is impossible to load or unload her without using them. The defendant Booth could not perform his contract with the other defendant without using them, and taking them off and putting them on is specifically referred to in the contract. But this is not decisive in favor of either of the defendants.

It appears that the work of putting on these hatches was being done in the dark late at night. There is nothing to show that this was not the usual way for performing this work, or that the plaintiff assumed the risk of any beyond the ordinary dangers of working without light. Apart from contract, the duty of the defendant shipowner toward a longshoreman lawfully at work upon his vessel is the same as that of an employer respecting his apparatus and the permanent constructions with and upon which

the laborer is expected to work, even though that laborer may be in the immediate employ of an independent contractor. *Hayes* v. *Philadelphia & Reading Coal & Iron Co.* 150 Mass. 457. *Toomey* v. *Donovan*, 158 Mass. 232. *Elliott* v. *Hall*, 15 Q. B. D. 315. *Moynihan* v. *King's Windsor Cement Dry Mortar Co.* 168 Mass. 450. Such duty is commensurate only with the scope of the invitation extended to the longshoreman which is simply to use the ship and its appurtenances as they then are and does not require improvements or changes, which would make conditions of labor safer. As was said in *Sullivan* v. *New Bedford Gas & Edison Light Co.* 190 Mass. 288, at page 292, " the employee as matter of contract assumes all obvious risks incident to the use of the apparatus on which he was employed to work." *McLeod* v. *New York, New Haven, & Hartford Railroad*, 191 Mass. 389, 391. But the contract does not contemplate an assumption of a risk which is not obvious. The numerous set screw cases all go upon the ground that the risk of injury from such a source is an obvious one and may be easily enough discovered on inspection. *Mutter* v. *Lawrence Manuf. Co.* 195 Mass. 517, and cases cited. *McKenna* v. *Gould Wire Cord Co.* 197 Mass. 406. But even when the assumption of risk grows out of a contract, it has never been held to cover those unseen or obscure dangers, which cannot reasonably be discerned by an employee, and which the employer properly may be held to know about. Under such conditions a duty to warn exists on the part of owner or employer, who knows or ought to know the danger, toward the laborer, who does not know and cannot fairly be charged with knowledge of it. *Wheeler* v. *Wason Manuf. Co.* 135 Mass. 290. *Silva* v. *Davis*, 191 Mass. 47.

The circumstances in the case at bar bring it within the latter rule. The duty of the defendant shipowner is in this respect as strong as it would be if it was the employer of labor. The danger was fraught with highly perilous consequences. The shortness of a little over half an inch, which rendered the hatch unsafe when placed in one position though harmless when put in another, was one which cannot be said as matter of law to have been apparent upon inspection by the eye as hatches of that size and character were lying on the deck. They were so heavy that they could not be moved by one man. It cannot be ruled

as a matter of law that a danger is obvious when it is not readily observed by the eye and is revealed only either by an experiment, to perform which two men at least are required, or by accurately measuring a five foot space. The doctrine of contractual assumption of risk rests for one of its fundamental supports upon the theory that the employee can, if he desires, look over the place at which and appliances with which he is to work, if he makes the contract for service, and decide whether he cares to enter the employment upon the conditions disclosed in view of the well settled principle of law that the employer is not bound to change the permanent arrangements then existing in order to make them safer. The risks with reference to which he may be held to have made his contract therefore are only those open and obvious to a reasonably prudent man making such examination as he might be expected to make if he wished to ascertain the nature and perils of the prospective service. *Rooney* v. *Sewall & Day Cordage Co.* 161 Mass. 153. *Young* v. *Snell*, 200 Mass. 242. *Donahue* v. *Boston & Maine Railroad*, 178 Mass. 251. *Doolan* v. *Pocasset Manuf. Co.* 200 Mass. 200, 202. *Fearns* v. *New York Central & Hudson River Railroad*, 186 Mass. 529. *Carroll* v. *Metropolitan Coal Co.* 189 Mass. 159. *Murphy* v. *Marston Coal Co.* 183 Mass. 385. The circumstances here are such as not to warrant the ruling as a matter of law that the danger was obvious or that the plaintiff contracted with reference to it. While the general principles laid down in *Sullivan* v. *New Bedford Gas & Edison Light Co.* 190 Mass. 288, are applicable to the case at bar, the facts here differ enough to distinguish the two cases and call for a different result here from that reached in the Sullivan case.

The written agreement between the shipowner and the stevedore, by which the parties attempted to make the latter and his employees mere licensees, does not by its terms or fair intendment include hatches. Therefore it is not necessary to discuss whether such a contract would affect the rights of those not parties to it and ignorant of its terms. See R. L. c. 106, § 76; *Kansas Pacific Railway* v. *Peavey*, 29 Kans. 169. While it is possible that under some circumstances and in another connection the word "appliance" might be broad enough to comprehend them, reading it as used in this contract in the

light of the maxim, *noscitur a sociis*, it is apparent that it was intended to mean only those portions of a ship's outfit and equipment kindred in general character to winches, booms and other like apparatus, and not to include such permanent and essential parts of the ship itself as hatches.

The case against the Leyland company is also plainly distinguishable from *Pingree* v. *Leyland*, 135 Mass. 398. There the injury arose from a defective winch belonging to the shipowner but used by the stevedore whose employee was the plaintiff. There was no evidence as to the terms under which it was thus used. It was said that it might be a mere loan of the winch in its then defective condition with no express or implied agreement that it was in good repair. That case was governed by the principle applied in *Mahoney* v. *W. A. Murtfeldt Co.* 198 Mass. 471, which these defendants embodied in their contract. But here the hatches were not a piece of machinery; they were an essential part of the vessel. The relation of longshoreman and shipowner implied by inherent necessity an invitation on the part of the latter to the former to use the ship for purposes of loading and unloading, and to use the hatches therefore as much as the hold. It must have been the intention of the shipowner that the hatches should be used by the plaintiff and his fellow laborers. Out of this springs liability. *Hayes* v. *Philadelphia & Reading Coal & Iron Co.* 150 Mass. 457. The duty is not onerous; it is only to call attention to dangers not obvious nor incident to the business or to pay for the consequences of failure to do so.

It is strongly urged that the defendant Booth is exonerated from liability in a case like the present by *Hyde* v. *Booth*, 188 Mass. 290. But without impugning that decision in any degree, the present case is distinguishable from it. As has been pointed out, the contract entered into between the two defendants does not include the hatches. But the contract between the two defendants distinguishes this from the Hyde case in that the stevedore here has "the sole and entire charge, direction and control of the work" of discharging and loading the steamship. This involves such possession as is necessary to perform the contractual obligation. It constitutes an appropriation by him for the time being of the ship for the purposes of performing

the contract. Having thus appropriated it by virtue of his contract he became liable to his employees respecting it as if it were his own. While to the ordinary relation of stevedore and shipowner the rule of *Hyde* v. *Booth* would apply, the present contract places the stevedore in a position akin to that of the lessee of a tenement, who adopts the building as his own and assumes the obligation of owner toward his employees. While he could not be required to make over the ship in order to render it safer, he was obliged to give warning of those dangers not incident to the business and not apparent upon reasonable inspection. In this respect his duty was the same as that indicated as resting upon the owner of the vessel.

Moreover, it might have been found that a proximate contributing cause to the plaintiff's injury was the darkness in which he was directed to assist in putting on the hatches by the foreman of the defendant Booth. The duty to furnish lights was one cast by the contract between the two defendants upon the defendant Booth. Many cases, where failure to furnish proper lights has been held not to be evidence of negligence, are not in point, for the reason that the danger, which confronted the plaintiff, was one as to which he may have been found to have had no knowledge and which adequate light might have revealed. The defendant Booth therefore had sufficient control of the ship to enable him to provide necessary lights, and it might have been found to be his duty with reference to such a condition as existed here to furnish them. Even though as to ordinary conditions it may have been the usual way to put on the hatches in the dark, yet to set his men at work in the dark with a short hatch amounted substantially to a trap. Though he could not change the construction of the ship, he could have done something to enable the men to see hidden and unusual dangers. *Gaynor* v. *Old Colony & Newport Railroad,* 100 Mass. 208. *Haggblom* v. *Winslow Bros. & Smith Co.* 198 Mass. 114. *Hodde* v. *Attleboro Manuf. Co.* 193 Mass. 237. *Johnson* v. *Field-Thurber Co.* 171 Mass. 481.

*Exceptions sustained in both cases.*