JANE MORRIS, administratrix, *vs.* WILLIAM N. PIKE & others. SAME *vs.* SAME.

Middlesex.    November 17, 1913. — February 26, 1914.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & DE COURCY, JJ.

*Negligence,* Employer's liability.

An order by an employer, to carpenters engaged in fastening rafters to stringers in the construction of a building, to "pick up your tools and come along with me and leave here," must be interpreted as an order to leave the work in a proper way, and cannot be held to be the cause of an injury to a fellow workman of the carpenters resulting from the falling some days later of one of the rafters which then was left by the carpenters standing on edge and insecurely fastened.

At the trial of an action against the employer of a carpenter for the conscious suffering and death of the carpenter, there was evidence tending to show that the deceased was engaged with several others in the construction of a shed; that fellow workmen of the deceased, several days before his injury, had been toe-nailing rafters on edge to stringers, preparatory to the placing of floor boards upon the rafters, when they were ordered from that work by the defendant, and, in leaving, left one rafter standing on edge and insecurely fastened; that, in looking at the rafter from the floor below, there was nothing in its appearance to indicate that it was in a dangerous condition; that four or five days later, while the deceased was assisting to move a derrick according to directions given by one who was assumed to be acting as a superintendent for the defendant, the rafter was struck and fell upon him, causing the injuries and death. *Held,* that the leaving of the rafter in a dangerous condition was due to negligence of the fellow servants of the deceased, that the defendant was not negligent in not inspecting the condition of the rafter, and that there was no evidence of negligence of the person who directed the deceased in the moving of the derrick.

TWO ACTIONS OF TORT, the first for the conscious suffering and the second for causing the death of the plaintiff's intestate, George Morris, who, while at work as a carpenter for the defendants on December 11, 1909, in the construction of a freight shed on Mystic Wharf in that part of Boston known as Charlestown,

was struck by a falling rafter and suffered injuries from which he died. Writs dated March 18, 1910.

In the Superior Court the cases were tried together before *Lawton*, J. The material facts in evidence are stated in the opinion. At the close of the plaintiff's evidence the judge ordered a verdict for the defendants; and the plaintiff alleged exceptions.

*F. P. Garland*, for the plaintiff.

*C. S. Knowles*, for the defendants.

LORING, J. These two actions of tort are brought for the death and for conscious suffering before death of one George Morris. At the time of the accident in question the defendants were building a freight shed to cover a pier in East Boston. This shed was some eight or nine hundred feet long, about one hundred feet wide, and eighteen or nineteen feet high. The construction of this shed was in substance as follows: Down the centre of the pier were two rows of uprights making an aisle in the middle of the pier which was apparently some thirty feet wide. This distance is of no consequence. Then stringers were placed on these uprights, crosswise to the length of the pier, one from one upright to its mate across the aisle which ran down the middle of the pier. Each of the other stringers ran from one of these two uprights to the framework of the shed on one of the side lines of the pier. On these stringers rafters were placed running lengthwise with the pier; and on these rafters the boards making the roof were nailed, these boards running crosswise to the length of the pier. The accident here complained of was caused by one of these rafters which had been left in position but not fastened, falling on Morris.

The facts shown by the plaintiff's evidence were in substance as follows: These rafters of hard pine were sixteen feet long, twelve inches wide, and four inches thick, and weighed from three hundred and fifty to four hundred and fifty pounds each. When in position, running from stringer to stringer, they were set up on edge and were toe-spiked into the stringer. It was customary to hoist up a lot of them and pile them on their sides on the stringers. Then the carpenters took them, one at a time, from the pile and placed them in position and spiked them down to the stringer. Some four or five days before the accident to the plaintiff one of the defendants called away the carpenters who were putting up

some rafters. He said to them: "Pick up your tools and come along with me and leave here, we will go somewhere." At that time the carpenters in question had just placed one of these rafters in position on its edge, but they had not fastened it to the stringers on which it rested. On being called away as stated above, they left it placed in position on its edge, without stopping to fasten it in any way, either permanently or temporarily, although it appeared that with a man at each end of the rafter it would have taken but two or three minutes to fasten it in position permanently.

On the day of the accident, which (as we have said) was some four or five days after this rafter had been thus left in position, but unfastened, the plaintiff and his work-mate, who were laying a top floor on the surface of the pier, finding a derrick in their way which had been used to hoist up the rafters on to the stringers, started to move it away. In moving the derrick out of their way they ran it against this unfastened rafter, whereupon the rafter being unfastened fell on the deceased, and caused the injuries here complained of.

Seen from the floor of the pier there was nothing in the appearance of this rafter to indicate that it was in a dangerous condition. It was in its proper position and the fact that it was not toe-spiked to the stringer could not be seen at that distance. There was evidence that a foreman by the name of Burke was present at the time, and that the plaintiff and his work-mate, in moving the derrick, "moved it in the position he [Burke] ordered them," and that at the time of the accident Burke had hold of the derrick and was helping to move it.

It is plain that on this evidence the accident to the deceased was caused by fellow servants negligently carrying out the order given them to pick up their tools and leave the work they were then doing. That order could not be found to have been a negligent one. Such an order can be interpreted only as an order to leave the work in a proper way, as was held in *Desautels* v. *Cloutier*, 189 Mass. 349. To the same effect see *Gouin* v. *Wampanoag Mills*, 172 Mass. 222, and *Bamford* v. *G. H. Hammond Co.* 191 Mass. 479.

It could not have been found that the defendants were negligent in not having inspected the rafter during the four or five days it

remained as it was negligently left by the carpenters when they were directed by one of the defendants to leave their work and go elsewhere. There was nothing to indicate that the rafter had been left in a dangerous condition, and in the absence of such an indication it could not be found to have been negligent not to inspect the work done in constructing the building then under construction.

Nor could negligence on the part of the defendant have been found because Burke had ordered the derrick to be moved as it was moved, and was assisting the deceased and his work-mate in moving it at the time of the accident. We do not consider whether the jury could have found that Burke was a superintendent, or to point out that Burke's act in helping to move the derrick was not an act of superintendence. The short answer to this contention is that it was not negligent to order the derrick to be moved so that it would hit or to let it hit the rafter, because Burke as well as the plaintiff and his work-mate had no reason to suppose that the rafter was not spiked down.

In addition to the contentions of the plaintiff which we have just dealt with, she has contended that this case comes within *McCauley v. Norcross,* 155 Mass. 584. But the negligence in *McCauley v. Norcross* consisted in allowing iron beams to be piled on the floor in such a way that they would fall on men working below, in case of a slight inadvertent push of the foot by a passer by. That was a condition apparent to the defendants and their superintendent, and in that respect the case is unlike the case at bar.

The entry must be

*Exceptions overruled.*