AGNES WHITE *vs.* GEORGE H. OAKES, and another.

Penobscot.    Opinion January 23, 1896.

*Sales.    Warranty.    Folding-Bed.    Amendment.*

In the sale of chattels by the manufacturer for specific uses an implied warranty arises that the article is fit for the use intended. In the sale of chattels, without express warranty and without fraud, caveat emptor applies, and there is no implied warranty. If the sale be by description, without opportunity for inspection, the description must be met.

The defendants, being dealers in furniture, and not manufacturers, sold a folding-bed to the plaintiff without express warranty of any kind. The bed proved dangerous to the persons using it, not from defective parts, but from faulty design. It proved to be a trap, suited to crush its occupants by shutting up like a jack-knife when slept upon. The weight of its occupants, if sufficient to overcome the gravity of the upright head-piece, would cause it to trip forward and the bed collapse. This bed did so, injuring a man sleeping in it so that he became partially paralyzed. The defendants had no knowledge of this danger. *Held;* that if the plaintiff can recover in this case, it must be from an implied warranty against the dangers of its contrivance.

The mechanism of the bed could be observed by the purchaser as well as by the vendor. Neither, unless skilled in mechanics, would be likely to discover the dangers of it, unaided by any object lesson. The hinge, or

flexible joint upon which the bed hung, was a contrivance of folding iron-straps that really brought the point of support much farther front at the head than they seemed to, thereby overcoming the gravity of the head-piece and tending to pitch it forward. The bed, when sufficiently loaded, would bring the centre of gravity of the upright head-piece so far outside its base, or so nearly so, that any unusual disturbance would work that result,—especially when the castors were turned under. The sale of the bed was with full opportunity of inspection. It was shown to the purchaser, and the terms of the sale were put in writing. *Held*; that the plaintiff, therefore, took no implied warranty, or an equivalent right, unless facts were concealed from her which made the transaction fraudulent. No concealment was shown, and it did not appear that the defendants knew of the dangerous contrivance that operated the bed.

After the sale, the bed broke down, and the defendants were called upon to take it back. They said they would fix it and warrant it all right. One of the iron straps had broken and the defendants put on a new one. *Held*; that the defendants were neither bound to repair the bed nor take it back. Such repairs were gratuitous, and any warranty they might have then made would have been without consideration and not binding. *Also*, that an assurance that its mechanism had been made sound did not amount to a warranty of its safety in use, it not appearing that the defendants were informed of any inherent danger in its use from faulty contrivance.

In an action where the plaintiff's principal claim was for reimbursement of damages paid to a boarder for his injuries sustained while using a folding bed, that had been bargained for on installments, the plaintiff moved to amend the declaration by a count for the recovery of the money paid under the bargain. The plaintiff claimed that the defendants demanded payment of the overdue money, and which being refused, they took the bed. The defendants denied the demand, and said they retook the bed with the plaintiff's consent. *Held*; that under the terms of sale they could do both; and that the amendment if granted would avail the plaintiff nothing. The defendants have a legal right to the part payment and the property.

ON REPORT.

This was an action to recover damages sustained by the plaintiff by means of a folding-bed falling upon her that she alleged was sold to her with a warranty and was of faulty contrivance; also to recover damages sustained by another person, which she alleged that she was compelled to pay, happening through the same cause.

The declaration contained two counts. The first one alleged, in substance, that the defendants sold the plaintiff a folding bedstead in June, 1893; that it was made of bad materials, was not properly constructed, was unsuited for the purpose of a bedstead, and was not safe; that the defendants knew this

when they sold the bedstead to plaintiff; that in order to induce the plaintiff to buy it, defendants falsely affirmed and warranted the bedstead to be good, of good materials, properly made, and perfectly safe, and thereby the plaintiff was induced to buy the bedstead, the plaintiff being ignorant of its defective condition; that she took the bedstead home, began to use it, and a short time afterward while she and her husband were occupying it, the bedstead broke down and closed and injured the plaintiff, whereupon the defendants were notified of the defective condition of the bedstead; that they came to the house of the plaintiff, repaired the bedstead, and then and there specially and particularly warranted it again to be perfectly safe; and afterwards, on the fourth day of October of the same year, the bedstead again broke down, collapsed and closed, to the damage and injury of the plaintiff. This count did not speak of any hurt to other persons.

The second count was like the first except that it did not allege that the plaintiff was herself hurt by the bedstead, or that it broke down more than once, or that there was any warranty or representations by defendants of its safety after the bedstead was bought; and it alleged that Frank White, a boarder of plaintiff's, was by her permission and invitation using the bedstead on the night of October 4th, 1893, and it broke down, closed and injured him, whereby she became liable to Frank White in damages for it; that she settled with him for $5000, and these defendants are, as she alleged, liable to her for this sum.

The folding-bed was delivered to the plaintiff under the following writing:

"Leased of Oakes & Chandler the following articles: one folding-bed, ash, thirty-eight dollars, which article is to be used by me at No. 7 Washington street, and for which I agree to pay to the said Oakes & Chandler, or order, as follows: on delivery, the sum of ten dollars, and every month thereafter the sum of eight dollars until the said Oakes & Chandler shall receive the full sum named above. It being expressly agreed that the right

of property shall remain in said Oakes & Chandler until the same is wholly paid for; and in case of failure to pay any one of said installments after the same have become due, all of said installments remaining unpaid shall immediately become due and payable; and the said Oakes & Chandler may take, or cause to be taken, the said property, either with or without process of law, from the possession of the said subscriber or other representative to whom he may have delivered the same, without recourse against said Oakes & Chandler, or any money paid on account thereof. It being expressly understood that the money so paid on account shall be for the use and wear of said property. The articles leased cannot be sold or removed from the place designated in the lease without the lessors' written consent.

"Selling, conveying, concealing or aiding in concealing said property will subject the subscriber to liability under the provisions of the law.

"Witness my hand this tenth day of June, 1893, in presence of G. H. Oakes.

Agnes White."

*P. H. Gillin*, for plaintiff.

There are two questions to be decided by the court, first: whether Oakes & Chandler are liable to plaintiff, for the injury which she received by reason of the breaking of this bed; this would embrace all damages which were caused to the plaintiff by reason of the injury she received and inconvenience and annoyance to which she was put. Secondly: Whether the defendants are liable to the plaintiff for the injury which was caused to Frank White; that is to say, whether the defendants shall make good the costs to which the plaintiff has been put by reason of the injuries to Frank White, and the damages which she has thereby sustained.

The law seems to be well settled that a manufacturer or a dealer who contracts to supply an article which he manufactures or produces, or in which he deals, to be applied to a particular purpose, so that the buyer necessarily trusts to the judgment or skill of the manufacturer or dealer, there is in that case an

implied warranty that it shall be reasonably fit for the purpose
to which it is to be applied.   In such a case, the buyer trusts
to the manufacturer or dealer and relies upon his judgment and
not upon his own.   2 Benj. Sales, p. 865, § 988 ; *French* v.
*Vining*, 102 Mass. 132 ; *McDonald* v. *Snelling*, 14 Allen, 290
and 295, and cases cited.

In the last case the court says that this rule is an exception to
the maxim of caveat emptor.

If a man buy an article for a particular purpose made known
to the seller at the time of the contract, and rely upon the skill
or judgment of the seller to supply what is wanted, there is an
implied warranty that the thing sold will be fit for the desired
purpose.   2 Benj. Sales, § 993, p. 867 ; *Thoms* v. *Dingley*, 70
Maine, p. 100 ; *Howard* v. *Emerson*, 110 Mass. p. 320 ; *Brad-
ley* v. *Rea*, 14 Allen, p. 20.

The warranty extends to latent defects unknown to and even
undiscoverable to the vendor which render the articles sold unfit
for the purpose intended.   2 Benj. Sales, p. 868, § 994, and
cases cited.

If the vendor is informed that an article of a certain quantity,
character or description, suited for some specified purpose is
required, the law implies a promise from him that he will supply
to the purchaser an article of the quantity, character or descrip-
tion ordered and reasonably fit for the purpose for which it is
required.   2 Addison on Contracts, p. 215 ; *Hadley* v. *Baxen-
dale*, 9 Exch. p. 353 ; *Winsor* v. *Lombard*, 18 Pick. pp. 57
and 62 ; *Brown* v. *Edgington*, 2 M. & G. 279 ; 1 Pars. Cont.
8 Ed. * 583.

In the case of *Downing* v. *Dearborn*, 77 Maine, p. 457, the
court says : "The defendants believed they were purchasing
sound leather suited to manufacture into shoes, and that the
plaintiffs well knew the use for which the purchase was made
and sold the leather to be applied accordingly.   From the terms
of the sale the law implies a warranty that the leather should be
reasonably fit for the purposes for which it was bought.   Judge
HASKELL delivered the opinion in this case and he goes on to say
that, where a latent defect becomes known, they can seek their

remedy either for breach of warranty for deceit or may repu-
diate the sale and restore the article purchased, citing *Marston
v. Knight*, 29 Maine, p. 314; and he cited besides this on the gen-
eral proposition as to an implied warranty arising in the case of
the sale of manufactured articles: *Jones* v. *Just*, L. R. 3 Q. B.
197; *Hight* v. *Bacon*, 126 Mass. p. 11; *Pease* v. *Sabin*, 38
Vt. p. 432.

The defendants, after the first breaking of the bed, made an
express warranty that they would repair this bedstead so that
it would be fit for use, hence in this part of the case, we have
both an implied and an express warranty. The case of *Thorne*
v. *McVey*, 75 Ill. p. 81, cited in 2 Benj. Sales, p. 811, states
that both warranties may exist when not inconsistent, as was
done in that case, and the case was left to the jury on both.

It is elementary law that if the plaintiff to this action was
liable to Frank White, and these defendants liable to her, she
need not wait for a suit, but could settle with Frank White and
then bring her action to recover from the defendants.

In the case between the plaintiff and Frank White, there was
an implied warranty that the premises of the plaintiff were
reasonably safe and secure. *Francis* v. *Cockrell*, L. R. 5 Q.
B. 184 and 501; 1 Addison Torts, 584.

*Jasper Hutchings*, for defendants.

Counsel cited: *Langridge* v. *Levy*, 2 M. & W. 519; *Carter*
v. *Harding*, 78 Maine, 528; *Longmeid* v. *Halliday*, 6 Ex. 761;
S. C. 6 Eng. L. & E. 562; *Winterbottam* v. *Wright*, 10 M. &
W. 109; *Thomas* v. *Winchester*, 2 Selden (N. Y.), 397;
*Davidson* v. *Nichols*, 11 Allen, 514; Whart. Neg. §§ 134, 135,
notes; *Carter* v. *Towne*, 10 Mass. 507; *Kingsbury* v. *Taylor*,
29 Maine, 508.

Sitting: Peters, C. J., Foster, Haskell, Whitehouse,
Wiswell, Strout, JJ.

Haskell, J. The defendants, being dealers in furniture and
not manufacturers, sold a folding-bed to the plaintiff without
express warranty of any kind. The bed proved dangerous to

the persons using it, not from defective parts, but from faulty design. It proved to be a trap, suited to crush its occupants by shutting up like a jackknife when slept upon. The weight of its occupants, if sufficient to overcome the gravity of the upright head-piece, would trip that forward and the bed collapse. This bed did so, injuring a man sleeping in it so that he became partially paralyzed. The defendants had no knowledge of this danger. If, therefore, the plaintiff may recover in this case, it must be from an implied warranty against the dangers of its contrivance.

The mechanism of this bed could be observed by the purchaser as well as by the vendor. Neither, unless skilled in mechanics, would be likely to discover the dangers of it, unaided by any object lesson. The hinge, or flexible joint upon which the bed hung, was a contrivance of folding iron straps that really brought the point of support much further front at the head than they seemed to, thereby overcoming the gravity of the head-piece and tending to pitch it forward. The bed, when sufficiently loaded, would bring the centre of gravity of the upright head-piece so far outside its base, or so nearly so, that any unusual disturbance might work that result, especially when the casters were turned under.

"In the sale of chattels by the manufacturer for specific uses an implied warranty arises that the article is fit for the use intended." *Downing* v. *Dearborn*, 77 Maine, 457. In the sale of chattels without express warranty and without fraud, caveat emptor applies, and there is no implied warranty. *Briggs* v. *Hunton*, 87 Maine, 145; *Kingsbury* v. *Taylor*, 29 Maine, 508; *Winsor* v. *Lombard*, 18 Pick. 57; *Mixer* v. *Coburn*, 11 Met. 559; *French* v. *Vining*, 102 Mass. 132; *Howard* v. *Emerson*, 110 Mass. 320. If the sale be by description, without opportunity for inspection, the description must be met.

The sale of this bed was with full opportunity of inspection. It was shown to the purchaser, and the terms of sale were put in writing. She therefore took no implied warranty, or an equivalent right, unless facts were concealed from her that made the transaction fraudulent. No concealment is shown. It does

not appear that the defendants knew of the dangerous contrivance that operated the bed. They deny such knowledge. But it is said that, after the sale, the bed broke down, that the defendants were called upon to take it back and that they said they would fix. it and warrant it all right. One of the iron straps had broken and the defendants put on a new one. The defendants were neither bound to repair the bed nor take it back. They gratuitously repaired it and any warranty they might have then made would have been without consideration and not binding. But the conversation testified to does not amount to a warranty of its safety in use. At most, it can only be considered an assurance that its mechanism had been made sound. It does not appear that they were then informed of any inherent danger in its use from faulty contrivance. Had they been aware of this, and concealed the danger and allowed the plaintiff to further use the bed when they knew of its dangerous character, other considerations would arise not material here. There is no phase of the case as presented that can cast any liability upon the defendants.

The plaintiff asks to amend by inserting a count for the purchase money paid. The amendment could do the plaintiff no good. The bed was bargained on installments. The plaintiff says that, after the shocking disaster with the bed, the defendants demanded payment of money overdue, which being refused, they took the bed. The defendants deny the demand, but say that they retook the bed by plaintiff's consent. In either case, under the terms of sale, they might do so. They have both part payment and the bed. That was their legal right, and a more generous course cannot be demanded by law.

*Judgment for defendants.*