## PFEIFFER v. NORMAN.

(— L.R.A.(N.S.) —, 133 N. W. 97.)

**Pleading — construing as a whole.**

1. The effect of a pleading is not necessarily determined by the technical definition of a single word. Words used in a pleading must be construed with reference to the context, and, when it is apparent that a word is not used in the statutory sense, courts will interpret it in the light of its relation to and as explained by the pleadings as a whole. *Held*, in the case at bar, that the words "rescind and cancel," employed in the pleadings, and particularly in the answer of the defendant, are modified by other language of the pleadings, and that they are not used to indicate a statutory rescission of a contract.

**Conditional sale — passing of title — retaking of property.**

2. A conditional-sale contract does not convey title, and if its terms provide therefor it entitles the vendor to retake possession of the property described therein, on default by vendee, if it has previously been delivered to him; and the rights of the vendee are terminated when this is done.

**Conditional sale — retention of title — retaking possession.**

3. Under the contract considered in this case, the title remained in the vendor until all the conditions of the contract should be performed by the vendee, and under its terms, the facts showing that the vendor retook possession of the property on consent of all interested parties, no demand or notice was necessary, and the contract relations of the parties were terminated when the vendor retook the property.

**Conditional sale — retaking possession — recovery of partial payments.**

4. In the absence of any statutory provision on the subject, it is held that when a conditional-sale contract permits the termination thereof on default of the vendee, and the vendor retakes possession of the property involved, as he

Note.—As to vendor's rights on default of vendee in conditional sale, see note in 89 Am. Dec. 128.

had a right to do, the vendee cannot recover, in an action at law, partial payments made on such contract; and to hold otherwise would be to offer a bounty for the violation of contracts.

**Conditional sale — retaking possession — recovery of partial payments — new contract.**

5. If the parties to such a contract enter into a new contract at the request of the vendee, after the vendor has resumed possession, and their former contract relations have ceased, this does not entitle the vendee to recover payments made under the original contract.

**Conditional sale — retaking possession — notice or demand — waiver.**

6. Any rights which may have accrued to the vendee to notice or demand, although time was made of the essence of the contract involved in this suit, were waived.

Opinion filed October 26, 1911.

Appeal from District Court, Grand Forks county; *Templeton, J.*

Action by William Pfeiffer against M. Norman. From a judgment on motion for judgment notwithstanding the verdict, or for a new trial, plaintiff appeals.

Affirmed.

*W. J. Mayer,* for appellant.

*Murphy & Duggan,* for respondent.

SPALDING, J. The material facts in this case are as follows: On the 22d day of October, 1906, respondent delivered to one Downey certain furniture, rugs, window shades, etc.; the value and price of each article being agreed upon in the contract entered into. Such contract provided that Downey had purchased of respondent the temporary right to the furniture and property therein named, and that by prompt payment of certain sums monthly to respondent, amounting in the aggregate to the price placed upon the property, the respondent should execute to him a bill of sale. The last payment became due Feburary 2, 1907. The agreement contained certain provisions regarding the care and use of the chattels, and the further provision that, if he should make default in any of the payments agreed to be made or in any of the conditions of the contract, the respondent was authorized and empowered at his election at once, without notice, to resume possession of said property and to take the same wherever situated, but in such case all pay-

ments theretofore made should be forfeited to the use of the respondent; and that if the same should deteriorate or be damaged more than by ordinary wear and tear, he should be entitled to resume possession at once, and without notice, and in the same manner as if default had been made in any of the other conditions. Time was made of the essence of the contract.

The evidence shows that payments were made by the purchase of feed from a firm of which Downey was a member, on the agreement that the purchase price should be applied on this contract. A balance still remained due when this action was brought and tried, and Downey misused the furniture and other materials, and abandoned it. Thereupon, and with the consent of Downey and appellant, respondent took possession thereof. Downey subsequently requested that he be allowed to complete payment therefor, but no payment was made after May 11, 1907, and after storing it for two years respondent sold the goods at private sale. In the meantime Downey's firm dissolved partnership, and he assigned all his claims to a repayment of the payments made on such chattels to the appellant, his former partner, and in September, 1909, appellant brought this action to recover the whole amount paid.

It is only necessary to give a brief abstract of the complaint. It alleges the purchase of the chattels by Downey; the price to be paid therefor; that by the terms of their agreement respondent was empowered to rescind the same for failure to perform on the part of Downey; the payments made; and that respondent, having elected to rescind said contract, seized and repossessed himself of the goods and disposed of the same to his own use; the assignment of Downey's claim to appellant; and a demand for a return of all the money paid on the contract to the respondent, and the refusal of such demand. The answer contains the usual qualified general denials; admits the execution of the contract, and a difference in the articles in price, which difference is sustained by the evidence without conflict; an allegation that Downey failed to pay any part of the price of such property, and delivered all of the same to the defendant for storage at the rate of $2 per month; that it was stored by him for two years; that he repeatedly requested Downey to pay for the same, but that he failed to do so; that no notice of any transfer of any obligation to the appellant was ever given respondent; and an admission of partial payment, through the purchase of feed of

appellant's and Downey's firm, and that it was credited to the account of said Downey. The answer contains a further allegation that in "the month of January, 1909, respondent elected to rescind and cancel said contract for the reason that no other settlement of said contract seemed probable, and the goods were constantly deteriorating in value; that it had been used and marred and injured, and was of the value of $35 and no more." It also sets up a counterclaim against the appellant for goods sold him, which it is unnecessary to further notice, as the amount involved is not in controversy, neither is the validity of the counterclaim. No demurrer or motions were interposed to the answer, and the case was duly tried to a jury. After both parties had rested, respondent moved for a directed verdict, on the ground that the facts proved were insufficient to constitute a cause of action in any sum, and that upon the pleadings and proof it conclusively appeared that Downey was indebted to the respondent in the sum of $19.50, and that if the plaintiff was the owner of the rights and burdens of Downey he was indebted to the respondent in the sum of $31.15, and upon other grounds which are immaterial. The motion was denied, and the jury returned a verdict in favor of appellant for $40.75 damages, whereupon respondent submitted a motion for judgment *non obstante veredicto* or for a new trial, in brief upon the grounds stated in his motion for a directed verdict. This motion was granted and judgment entered for the respondent for $12, a portion of the counterclaim. From this judgment an appeal was duly perfected.

After considering the record, we are satisfied that only two questions are presented: (1) What was the effect of the pleadings upon the issue; and (2) the nature of the contract between respondent and Downey, and the rights of the parties under it.

1. The appellant's case is built up on the theory that, because he pleads a rescission of the contract by the respondent, and that in his answer the respondent admits a rescission, appellant is entitled to a return of all sums paid. It is contended by the respondent that the word "rescission" was "artlessly" used in his answer, and that it is not to be taken in the sense or meaning that the respondent had elected to rescind in such a sense that he must return everything of value received from appellant or Downey.

We find several authorities which use the word "rescind" or "rescis-

sion" to designate the act of taking possession of property sold on a conditional-sale contract, wherein such taking possession is not construed as a technical, legal rescission, entitling the vendee to recover payments made. Patterson v. Murphy, 41 Neb. 818, 60 N. W. 1; Bryson v. Crawford, 68 Ill. 362. But it is elementary that the words of a pleading must be construed with reference to the context. When the answer of the respondent is read as a whole, and particularly the allegation in which the word "rescission" is used, we are satisfied that a fair construction of its terms does not lead to the conclusion that he was pleading a rescission in the statutory sense. The answer must also be read in the light of the allegations of the complaint. Appellant set out in effect the terms of the agreement by which Downey received possession of the furniture, and then in construing the terms of such agreement, which was received in evidence, he alleges that under its terms the respondent is authorized and empowered to rescind the same, etc.; and that, having elected to rescind said contract, he seized and repossessed himself of the goods.

The respondent in his answer, after setting out the terms of the contract and other items of defense, alleges that the defendant did elect to rescind and cancel said contract for the reason that no other settlement of said contract seemed probable, and the goods were constantly deteriorating in value, and under the terms of said agreement said defendant, as authorized by said contract of sale, possessed himself of the said furniture.

We think that the meaning of the words "rescind" and "cancel" is modified by the later allegation explaining how he rescinded and canceled said contract,—namely, by retaking possession thereof, which he was authorized to do by the contract,—and that the only interpretation which can properly be placed upon the allegation of the respondent's answer is that he repossessed himself of the goods described, as he was permitted to do by the terms of the contract.

2. We have no doubt that the contract in question in this case, although drawn in the form of a lease, was in law a conditional-sale contract; but, be that as it may, it must be so treated for the reason that it is so considered and discussed by both appellant and respondent, and unquestionably it was so treated by them in the trial court. This being true, we will determine what the rights of the appellant were under that contract.

That a conditional-sale contract does not convey title, and entitles the vendor to retake possession thereof, when it has been delivered to the vendee, on default in the terms of the contract, and that the rights of the vendee are terminated when this is done, has been held several times by this court. Hawk v. Konouzki, 10 N. D. 37, 84 N. W. 563; Bidgood v. Monarch Elevator Co. 9 N. D. 627, 81 Am. St. Rep. 604, 84 N. W. 561, and authorities cited.

Neither the appellant nor Downey, his assignor, acquired any title to the goods. Their title was conditioned upon the performance of all the requirements found in the contract to be by the vendee performed. Until they were performed, the title would be and remain in the respondent. That either Downey or the appellant completed payment as required by the terms of the contract is not claimed. Neither is it shown that they ever offered to complete payment, or demanded a return of the goods in case they should comply with the contract. It is, however, shown that respondent was justified by their failure to pay, and by their neglect and misuse of the goods, in retaking possession. Not only that, but it is shown that he did so with the knowledge and consent of both Downey and appellant. We must therefore assume that at the date of his retaking possession the contract relations of the parties were terminated.

The question then arises whether, on the termination of such contract, caused by the default of the vendee, the vendee may recover the partial payments made thereon. A few states seem to hold that he can do so, but it is not clear as to what extent their decisions are governed by statute. In this state there is no statute specifically covering such cases. In any event, we are satisfied that the great weight of authority, as well as of reason, is to the effect that in an action at law the vendee cannot recover such payments where he is the party in default. To hold that he might do so would lead to startling results.

This may be illustrated by the effect on the parties to a conditional contract for the purchase and sale of land on instalments. The vendee might make such a purchase for speculative purposes, and on a failure to make a profitable sale, or on the property depreciating or failing to increase in value, he might default and recover all sums paid, at most only deducting the rental value of the premises. This would result in the contract not serving the purpose for which it was intended, but, on the

contrary, becoming a shield for the vendee by means of which he could take contracts for land, hold them for a rise, and, on failure to realize a profit, surrender them and recover all sums paid, thus making the vendor take all the chances; the vendee being bound by nothing. As is said by one authority, it would be offering a bounty for the violation of contracts.

In Glock v. Howard & W. Colony Co. infra, the California court says: "It would be to the last degree unjust and inequitable to allow a vendee, after his default under such contract, to put the vendor in default by a mere tender. The practical effect of such a rule would be that a vendee without risk could speculate indefinitely in the land of the unfortunate vendor. The vendee would enter into a contract in which time would be declared of the essence, and stipulate under condition precedent, as in this case, to make payment at a certain time. Failing to make payment, he would three months, six months, one year, or, as in this case, over three years, after the date of the failure, make an offer to perform, and if the land had risen in value, according to the theory of respondents here, could compel performance; but in every case he could recover the moneys paid."

Lord Loughborough, Lloyd v. Collett, 4 Bro. Ch. 469, note says: "There is nothing of more importance than that the ordinary contracts between man and man, which are so necessary in their intercourse with each other, should be certain and fixed, and that it should be certainly known when a man is bound and when not. There is a difficulty to comprehend how the essentials of a contract should be different in equity and at law. It is one thing to say the time is not so essential that in no case in which the day has by any means been suffered to elapse the court would relieve against it and decree performance. The conduct of the parties, inevitable accident, etc., might induce the court to relieve. But it is a different thing to say the appointment of a day is to have no effect at all, and that it is not in the power of the parties to contract that if the agreement is not executed at a particular time the parties shall be at liberty to rescind it. . . . I want a case to prove that where nothing has been done by the parties this court will hold in a contract of buying and selling a rule . . . that the time is not an essential part of the contract. Here no step has been taken from the day of the sale for six months after the expiration of the time at which the contract was to be completed. If a given default will not do, what length of time

will do? . . . An equity out of his own neglect! It is a singular head of equity."

Such contracts are intended to make possible and secure the sale of property on small payments, either at the time of sale or subsequently, and a large percentage of the transactions, both in real estate and personal property, in this state, is conducted in this manner. To hold that by reason of his own default the vendee can recover all his payments would work a revolution of business methods long established, and in the end result in untold hardships to vendors. Notwithstanding the fact that in same instances the vendee may be exposed to hardship by a denial of his right to recover all the payments made, we see no sound reason based on logic or authority warranting us in holding that he may do so. Hansbrough v. Peck, 5 Wall. 497, 18 L. ed. 520; Satterlee v. Cronkhite, 114 Mich. 634, 72 N. W. 616; Patterson v. Murphy, 41 Neb. 818, 60 N. W. 1; Bryson v. Crawford, 68 Ill. 362; White v. Oakes, 88 Me. 367, 32 L.R.A. 592, 34 Atl. 175; Glock v. Howard & W. Colony Co. 123 Cal. 1, 43 L.R.A. 199, 69 Am. St. Rep. 17, 55 Pac. 713; Neis v. O'Brien, 12 Wash. 358, 50 Am. St. Rep. 894, 41 Pac. 59; McAlpine v. Reicheneker, 56 Kan. 100, 42 Pac. 339; Hanschka v. Vodopich, 20 S. D. 551, 108 N. W. 28; Way v. Johnson, 5 S. D. 237, 58 N. W. 552; Walter v. Reed, 34 Neb. 544, 52 N. W. 682; Downey v. Riggs, 102 Iowa, 88, 70 N. W. 1091; Eames v. Germania Turn Verein, 8 Ill. App. 663; Rayfield v. Van Meter, 120 Cal. 416, 52 Pac. 666; Bradford v. Parkhurst, 96 Cal. 102, 31 Am. St. Rep. 189, 30 Pac. 1106; Tufts v. D'Aroambal, 85 Mich. 185, 12 L.R.A. 446, 24 Am. St. Rep. 79, 48 N. W. 497.

For a construction of various sections of our statute, to some of which reference is made in appellant's brief, and the reasons why they are inapplicable in this case, see Glock v. Howard & W. Colony Co. 123 Cal. 1, 43 L.R.A. 199, 69 Am. St. Rep. 19, 55 Pac. 713.

In Poirier Mfg. Co. v. Kitts, 18 N. D. 556, 120 N. W. 558, we held that the vendor under a contract of conditional sale may elect whether he will recover possession of the property sold in which he still retains title, or waive this title and sue for the value or selling price, but that he cannot do both. In the case at bar the vendor elected to stand on his contract and retake possession of the property. Such contract gave him the right to do so without notice. As we have shown, such possession

was retaken with the knowledge of all the parties interested, and with either their tacit or express consent. We are satisfied that, under the pleadings and evidence, the contractual relations of the parties ceased when the defendant retook possession of the property; that is to say, the relations under the contract in question.

If, as may be admitted, they thereafter entered into a new contract, express or implied by respondent, assenting to the suggestion of Downey that he wanted the privilege of paying the remainder, that, on his failure to do so, does not entitle him to recover what he had paid under the original contract. Whether he would be entitled to recover what he paid after such new arrangement need not be considered, because the evidence fails to disclose what part of the payments through the purchase of feed were made subsequent to the retaking of possession.

Many authorities hold that, where a vendee makes a deposit or payment on the purchase price, without taking possession of the chattels, and thereafter fails to complete the payments, he forfeits the deposit. The question of time being of the essence of the contract is, under the pleadings and evidence, not in the case. The contract permitted respondent to retake possession without notice, and both notice and demand were waived by the consent of the interested parties that he retake the property.

Some authorities make a distinction between those conditional-sale contracts wherein the condition is that the plaintiff pay instalments when they become payable, and those in which the condition is that the property is to remain the property of the vendor until such payments are made, and hold that in the one case the omission of the purchaser to pay at maturity does not operate as a forfeiture of his rights under the contract, in the absence of a demand on the party of the seller for payment or for the property, and that on such demand, even if payment was overdue, the purchaser would have a right to pay and retain the property; but that, under a contract with the other wording, demand would not be necessary. Taylor v. Finley, 48 Vt. 78.

We may add that the pleadings and the record in this case are in a somewhat hazy condition. Neither the appellant nor the respondent appears to have known on just what theory to proceed with the action or defense. If the correct procedure was in equity for an accounting of all their differences relating to the property in question, on the evidence

included in the record, the respondent would have been entitled to a judgment in a larger sum than he obtained.

The judgment of the District Court is affirmed.

MORGAN, Ch. J., not participating.