FIFTH–THIRD UNION TRUST CO. v.
CIST et al.
No. 7896.

Circuit Court of Appeals, Sixth Circuit.
June 28, 1939.

James A. McDonald and Walter K. Sibbald, both of Cincinnati, Ohio (James A. McDonald and Walter K. Sibbald, both of Cincinnati, Ohio, on the brief), for appellant.

John C. Taylor and Floyd Williams, both of Cincinnati, Ohio (Peck, Shaffer & Williams, Floyd Williams, and John C. Taylor, all of Cincinnati, Ohio, on the brief), for appellees.

Before HICKS, SIMONS, and HAMILTON, Circuit Judges.

SIMONS, Circuit Judge.

The appellees, Mary B. Cist and Letitia C. Arnold, have for a long time owned real estate at the northwest corner of George and Elm Streets in Cincinnati as tenants in common, the Central Trust Company acting as their rent collection agent, but without power to sell or to lease for longer than three years. In March, 1923, a real estate broker undertook to negotiate between the Trust Company and Charles M. Cist, husband of Mary B. Cist, on the one hand, and Frank Wolpa on the other, for the sale of the property. The negotiations culminated in May of 1923 in the execution upon payment to the owners of $10,000 of identical written leases from them to Louis Wolpa and Frank Wolpa, his son, each for the term of twenty years, and each containing an option to purchase the lessor's interest in the property for $30,000, exercisable during the month of May, 1933, 1938, or 1943, upon the condition that all installments of rent and all taxes, assessments and insurance premiums would be promptly paid when due, and all of the covenants of the lease performed.

On September 30, 1932, in a proceeding brought by a creditor in the Court of Common Pleas of Hamilton County to have a conveyance by Frank Wolpa, who had succeeded to his father's half-interest, set aside as in fraud of creditors, the lessors upon their cross-petitions were restored to possession of the leased premises for default in payment of rent and taxes, wrongful assignment, failure to carry sufficient insurance, and because of the bankruptcy of Wolpa. In December, 1932, appellees filed a bill in the Court of Common Pleas to quiet title to the property, making the appellant as successor in interest to Wolpa a party, and obtained a decree quieting their title and cancelling the leases.

Subsequently the appellant brought the present suit. It is for money had and received in the sum of $15,000. It is based on the theory that the leases were but part of contracts for the purchase of the property by the Wolpas for the sum of $75,000, with $10,000 as a down payment and an additional $5,000 included in the rental payments during the first five years of the term. The leases and purchase options therein included are asserted to be security for the balance of the contract price. The contracts are said to have been rescinded by the lessors retaking possession of the premises before the time had arrived for the exercise of the purchase options, and so the vendors are obligated to return the purchase money. The appellant is successor in interest to the Wolpas, and asserts it may maintain the suit notwithstanding the adjudication of Frank Wolpa as a bankrupt because the bankruptcy trustee disclaimed any rights he may have had to recovery of the purchase money, and such rights therefor reverted to him and passed to the appellant by assignment. The District Court rejected each of these several contentions and gave judgment for the appellees. The appeal followed.

There is no doubt that the appellees wished to sell and the Wolpas to buy the Cincinnati property; that the aggregate purchase price of both interests was $75,000, upon terms of $10,000 down, $5,000 in installments during the next five years, and the balance within twenty years. The agreements, however, took the form of leases by the terms of which the lessees agreed to pay an annual rental, which during the first five years was equivalent to 6% upon $65,000, plus an additional $1,000, and a rental thereafter equivalent to 6%

on $60,000. The leases were the only written instruments executed. An effort to derive from oral statements and the letters and telegrams of the broker, the Central Trust Company, and Charles M. Cist, agreements other than those finally concluded, must fail in view of the Statute of Frauds and the absence of written authority from the owners either to Cist, the Trust Company, or the broker, to conclude agreements for the sale of the property. There is no contention that the leases were induced by fraud or misrepresentation, resulted from mutual mistake of the parties, are in any respect ambiguous, and there is no prayer for their reformation. While courts have been increasingly liberal in construing contracts so as to effectuate the clear intention of the contracting parties, we know of no principle of law that will prevent competent persons desiring to buy or sell real estate upon terms, from putting their transaction in the form of a lease with rentals equivalent to interest, and the right of the purchaser to acquire title secured by an option to be exercised at his election, nor any principle that precludes its enforcement according to its terms. There is advantage to the purchaser in such agreement in that he does not at all events obligate himself to buy and may abandon his option and surrender the lease at the conclusion of the term without liability for the purchase price. Rentals measured by interest return upon the value of property are not unusual, and agreements therefor are in no sense unconscionable.

■ This aside, however, insuperable obstacles to recovery reside in decrees of the Court of Common Pleas of Hamilton County which we regard as res adjudicata. In May of 1931 Frank Wolpa, after he had succeeded to the interest of his father in the leases, was adjudicated a bankrupt upon an involuntary petition. Whatever his rights, whether to an equity in the real estate or a chose in action for recovery of the purchase money, became vested in his trustee. The appellees filed an intervening petition in the bankruptcy court alleging default and praying restitution, but since the property was already in custody of the state court under a creditor's bill to set aside conveyances, they were relegated to their remedies there. Having already been made parties to the state court proceeding on motion of the appellant, they filed answers and cross-petitions alleging defaults and praying a decree of restitution. The bankruptcy trustee had intervened in the suit and was one of the custodians of the property. On June 15, 1932, a decree was therein entered setting aside a conveyance by Wolpa of the George and Elm Street property to his wife, and another by her to the Ruthnor Realty Company, and vesting title to the property in the trustee subject to the rights of the appellees. On September 30, 1932, a supplemental decree was entered, endorsed by attorneys for the appellant and the trustee, adjudging the cross-petitions of the appellees well taken and returning to them the property covered by the leases.

■ Some point is made of the fact that the appellees did not make Wolpa a party to their cross-petitions in the state court proceeding or cause process to be served upon him. We do not pause to consider the question, for it appears that after the entry of the first decree setting aside the fraudulent transfers and vesting title to the property in the trustee subject to the rights of Cist and Arnold, Wolpa moved to set it aside. Undoubtedly whatever defense he could have made to the cross-petitions he could equally have advanced in support of his motion to set the decree aside. If there be infirmity in the decree without personal service upon Wolpa, which we doubt, it was cured once Wolpa took affirmative action under the principle announced in Forsyth v. Hammond, 166 U.S. 506, 517, 17 S.Ct. 665, 41 L.Ed. 1095.

■ The principle of res adjudicata, as we understand it, requires that a decision by a court of competent jurisdiction in respect to any essential fact or question in one action be regarded as conclusive between the parties or their privies in all subsequent actions, Forsyth v. Hammond, supra; Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195, and estoppel by judgment extends not only to every matter which was offered or received to sustain or defeat the claim, but to every other matter which might with propriety have been litigated and determined in the action. Nolan v. City of Owensboro, 6 Cir., 75 F.2d 375; Davis v. Mabee, 6 Cir., 32 F.2d 502, 503; Kimberly Coal Co. v. Douglas, 6 Cir., 45 F.2d 25, 28. The rule is not otherwise in Ohio. Covington & Cincinnati Bridge Co. v. Sargent, 27 Ohio St. 233.

While cross-petitions in the state court proceedings prayed restitution of the property and the termination of the leases, there is no doubt that the bankruptcy trus-

tee, vested with the interest of the bankrupt in the contracts, could have interposed as against such petitions any claim possessed by the bankruptcy estate whether to an interest in real estate or a chose in action, and resisted the cross-petitions until it was recognized. The trustee did not disclaim the leasehold, and as for any right of action for recovery of purchase money, there is nothing in the record to show that the trustee had knowledge of such claim, and one may not disclaim an interest of which he is unaware. The bankrupt's schedules are not in the record. It is stated, however, without contradiction, that they do not show the balance of purchase price as a liability to appellees, and the inference is inescapable in the absence of contest by the trustee that they do not show the present claim an asset.

That present issues could appropriately have been litigated in the state court proceedings appears even more clearly in the action brought by the appellees to quiet title to the property. Wolpa, his wife, the bankruptcy trustee, and the appellant, were all made parties and served with process. Both Wolpa and the appellant, which had already succeeded to Wolpa's interest by assignment, filed answers raising substantially the same questions here sought to be litigated, though for reasons that do not clearly appear they were subsequently withdrawn.

■ But if the appellant is not estopped by the state court decrees, it still must fail. Its right to recover payments made on the purchase price of the property is based upon the fact that the contracts were rescinded, with rescission accepted by Wolpa. There was no rescission, and appellant's contention in this respect is the fundamental error at the base of its claim. The declaration of default and decree for restitution were based upon the contracts, recognized their validity, and were in the exercise of remedies therein reserved. A suit to terminate a contract for its breach is a suit upon the contract; rescission expunges the contract as though it had never existed. One who pursues the course fixed by the agreement has not rescinded the agreement and is not cut off from the right to rely upon its provisions. C. W. Raymond Co. v. Kahn, 124 Minn. 426, 145 N.W. 164, 51 L.R.A.,N.S., 251; Pfeiffer v. Norman, 22 N.D. 168, 133 N.W. 97, 38 L. R.A.,N.S., 891; Niman v. Story & Clark Piano Co., 213 Mich. 397, 181 N.W. 1017; O'Brien v. Illinois Surety Co., 6 Cir., 203 F. 436.

■ Were we to consider pursuit of contractual remedies as in the nature of a rescission, there is still no right of recovery in the absence of promise, express or implied, that payments would be returned, unless equitable considerations clearly require it. The lessees here defaulted upon their contracts. As was said in an English case, Lloyd v. Collett, reported in a note to Harrington v. Wheeler, 4 Vesey's Ch. 689, "An equity out of his own neglect! It is a singular head of equity." A plaintiff at fault in not performing his contract may not take advantage of his own wrong by recovering back the payment he has made. Downey v. Riggs, 102 Iowa 88, 70 N.W. 1091. The instances in which a vendee may recover payments were enumerated in Battle v. City Bank, 5 Barb., N.Y., 414, with the conclusion that "In a case where the vendor has in all respects performed his contract, and the rescission is entirely in consequence of the unexcused default of the vendee in making further payments, to allow him to recover back the money paid, would * * * be little short of offering a bounty for the violation of contracts." The appellees tied up their property and surrendered opportunity for profitable sale to others upon a high market. They recovered their property upon a depreciated market. encumbered with back taxes and penalties. The difference in values is greater than the payments sought to be recovered, and in the meanwhile the lessees had the use of and the income from the property. There has been no unjust enrichment.

The decree below is affirmed.