No. 34,545

E. O. STEVENS, *Appellee*, v. THE ALLIS-CHALMERS MANUFACTURING COMPANY, *Appellant* (RAY VAN TIEGHEM and JOSEPH VAN TIEGHEM, Partners, as VAN TIEGHEM BROTHERS, Defendants).

(100 P. 2d 723)

Austin M. Cowan, C. A. McCorkle, W. A. Kahrs, Robert H. Nelson, all of Wichita, Al F. Williams, Don H. Elleman and Paul H. Elleman, all of Columbus, for the appellant.

Marc Boss and Fred A. Walker, both of Columbus, for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This was an action for damages for injuries plaintiff sustained by coming in contact with a whirling universal joint which was part of a "take-off" shaft for delivering power from a farm tractor to a small harvester-thresher familiarly known as a "combine."

The take-off shaft was attached to the tractor machinery for the reception of its power and was attached to the combine for the delivery of its power. The tractor was hitched to the combine by the common sort of device needless to explain. The take-off shaft was situated a few inches above the hitching device. It was about eight feet long, composed of four pieces of heavy two-inch tubing joined together by three universal joints. The latter were necessary to give the take-off shaft the requisite flexibility to permit its steady delivery of power to operate the mowing and threshing machinery of the combine as the outfit moved around the harvest fields.

Of the three universal joints which were component parts of the take-off shaft the one nearest the combine was so placed that there was no danger of a person coming in contact with it. The one nearest the tractor was guarded by a cover of metal sheeting. The mid-

dle universal joint was in open and plain view between the tractor and the combine and was not guarded.

Within easy access of the driver's seat on the tractor were devices for engaging or releasing the power which operated the machinery of the combine. The device on the right-hand side of the driver's seat was a knob and ratchet contraption which was not working well. It would release the power readily by a slight pressure on the knob, but when released it was quite bothersome to get it to reëngage the power.

On the left-hand side of the driver's seat was a lever which operated by hand or foot and served the same purpose. Because of the defective condition of the right-hand releasing device plaintiff commonly used this left-hand lever to control the operation of the combine machinery.

In 1937 plaintiff and his son-in-law were engaged in farming. Plaintiff owned a tractor and in June of that year he purchased through a local firm of implement dealers a five-foot Allis Chalmers combine and take-off shaft and, thus equipped, he set about the harvesting of his own and his neighbors' crops of oats and barley.

After a few days' use of the new combine with its take-off shaft and the tractor motive and operating power, on the evening of July 6, 1937, plaintiff stopped at a corner of a field to discharge the threshed grain carried by the combine into a waiting farm truck. The operating machinery of the combine continued to run. Plaintiff dismounted from the tractor and got on the right-hand side of the outfit. Desiring to stop the running machinery of the combine he stepped close to the second universal joint of the take-off shaft, and reached over it to get hold of the left-hand lever to disengage the power-drive machinery. In so doing his clothing caught in the rapidly whirling universal joint, and he was severely and variously injured.

Plaintiff testified that on July 6 he had been "combining" oats, and—

"It was around sundown when I decided to quit. As I pulled around the corner there was a truck waiting for grain from the combine. In order to elevate the grain out of the bin of the combine you throw the tractor into neutral and just let your power take-off run during the time. You have to get off the tractor and go back and take down the spout on the combine and the elevator runs the grain up the elevator and then back down the same spout. When you elevate the grain into the truck you put the spout into the truck. It is necessary in the operation of the combine to leave the power

running while you do this. . . . As I had finished delivering the grain into the truck, I went to the tractor, stepped forward a little, reached on (for) the clutch. . . . and some how or other my overalls caught someplace, which caught I suppose before I got far enough to reach the clutch. I did not get it out of gear and that is really the last I remember until they were helping me up off the ground. The last thing I remember was when I felt something grab on my overalls and it was all over before I had another thought. The next thing I knew I was lying on the ground trying to get up. Mr. Peck, the farmer I was combining for . . . grabbed me and helped me up. . . . my overalls were entirely gone . . . blood running all down both legs. I was hurting all over. . . . As I went to turn around I stepped down on this foot and that was the first I knew my leg was broken and my ankle went in the ground."

On cross-examination he testified:

"In getting off the tractor I stepped from the platform off to the right over the power take-off. I stepped clear over the power take-off to the ground. The platform is just behind the center of this tractor and I stepped clear over to the right-hand side. The power take-off is directly in the center of the back axle. . . . I stepped over the shaft and walked back to the harvester while the motor was in motion and had to open up the bin. After I lowered the grain into the wagon I started around to the tractor on the right-hand side and got up just back of the tractor. I reached through and threw up this little latch. I did not get my head under the seat and could reach the latch without putting my head under the seat. I do not know how long my arm is without a rule. I reached around with my right hand and the tractor at the time was facing west.

. . . . . . . . . . . . . . . .

[Counsel for defendant]: "Q. You mean you were standing on the right-hand side? A. Right-hand side.

"Q. And reached clear across the tool box? A. I put my left hand on the tool box, reached with my right hand with my head and shoulders just partly under, done it before and since then.

. . . . . . . . . . . . . . . .

"Q. Where is that tool box located with reference to the seat? A. It comes back just about even with the back end of the left fender on the inside of the left fender.

. . . . . . . . . . . . . . . .

"Q. You had to get your right shoulder and arm under the seat? A. Probably come close to the seat, but it's very convenient to get to it."

Plaintiff's petition stated all the pertinent facts. Defendant's answer contained a general denial, admitted that it manufactured the combine and the take-off shaft, and made several other minor admissions of fact—that its machinery was handled by local dealers, and that one of its local dealers had sold the combine according to its dealer's written contract, and—

"That the plaintiff was a farmer and [defendant] alleges that he was fully informed as to mechanism and operation of the combine in question and was fully conscious of and cognizant of all dangers in connection with the operation of the same and any dangers incident to universal joints and take-off shafts. . . . That if said universal joints were dangerous, the danger was obvious to the plaintiff or to any reasonably prudent person.".

Defendant also alleged that plaintiff was guilty of contributory negligence particularized thus:

"(a) In failing to make use of levers which would disconnect the drive shaft on which the universal joint was located. ´

"(b) In attempting to reach across the moving shaft to reach a lever or clutch when he could have gone around to the other side or gotten up on the seat and reached it without danger to himself.

"(c) In reaching across the moving or revolving shaft when he knew, or by the exercise of ordinary care should have known, there were universal joints on the same.

"(d) In not shutting off the motor before disengaging gears that revolve the shaft in question.

"(e) In not disengaging the gears which drive the revolving shaft before he got down off the tractor."

The cause was tried before a jury which returned a general verdict in favor of plaintiff and answered special questions, viz.:

"1. If you find in favor of the plaintiff, state what act or acts of negligence the defendant was guilty of. A. No protector for 2d universal joint back of tractor. .

"2. At the time of the accident could plaintiff have shut off the power or disengaged the clutch from the left side of the tractor or seat without coming into contact with the revolving second universal joint? A. Yes.

"3. At the time of the accident, could plaintiff have walked around front of tractor and disengaged the clutch from the left-hand side of seat and power shaft without coming into contact with the second universal joint? A. Yes.

"4. Could the power shaft to the harvester combine have been disengaged by the use of the knob or lever on the right-hand side without coming in contact with the second universal joint? A. Yes."

The usual post-trial motions were presented and disposed of. Judgment on the general verdict was entered for plaintiff. Defendant appeals, urging various errors, which so far as necessary will be noticed as we proceed.

The combine and take-off shaft were manufactured by defendant and were sold to plaintiff by its local dealer. The specific terms of the contract of purchase and sale were excluded from the jury's consideration on a technical point of procedure. The evidence showed that at the time of the sale, or at the time of the accident, no device

had been contrived or invented to serve as a shield around the middle universal joint so as to protect persons working about the outfit from coming in contact with it.

Under the jury's special finding No. 1, the omission of the defendant manufacturer to equip the take-off shaft with such a device was negligence—the one act of negligence of which the defendant was guilty.

Counsel for plaintiff vigorously oppose the application of the familiar rule of law which, simply stated, is that when a plaintiff sues a defendant for damages on as many *pleaded* grounds of negligence as the facts may seem to warrant, and the jury is asked to state what negligent act or acts defendant is guilty of, the special finding or findings of the jury in response to that question is in effect an acquittal of defendant of any and all other charges of negligence pleaded in plaintiff's petition. Thus in *Roberts v. Railway Co.*, 98 Kan. 705, 161 Pac. 590, the action was for damages for injuries caused by various alleged acts of negligence. The jury returned a general verdict for plaintiff and made a special finding of the particular negligent act of which they found the defendant guilty—which happened to be an untenable one under the circumstances. The trial court set aside the general verdict and gave judgment for defendant. On appeal that ruling was affirmed. In the opinion of this court by the late Chief Justice Johnston it was said:

"It appears to be conceded that as the case stands the defendant cannot be held liable because of the [latent] defect in the flue or cross-bar. It is contended, however, that as other grounds of negligence were alleged by the plaintiff and a general verdict was returned in his favor we should presume that these were established and furnish a basis for the verdict. The contrary of this contention is the rule. Such a finding in effect acquits the defendant of every charge of negligence stated in the petition or mentioned in the evidence, except the one specifically designated in the finding. (*Sugar Co. v. Riley*, 50 Kan. 401, 31 Pac. 1090, 34 Am. St. Rep. 123; *Hayden v. Railway Co.*, 87 Kan. 438, 124 Pac. 165; *Tecza v. Sulzberger & Sons Co.*, 92 Kan. 97, 140 Pac. 105; *Adams v. Railway Co.*, 93 Kan. 475, 144 Pac. 999.)" (p. 706.)

In *Brim v. Atchison, T. & S. F. Rly. Co.*, 136 Kan. 159, 12 P. 2d 715, the action was for wrongful death at a railway crossing. Defendant was charged with various acts of negligence. The jury found that the defendant's negligence was failure to maintain the crossing as required by statute. On appeal this court said:

"It will be observed that the negligence found by the jury lay in defendant's failure to conform to the statutory requirements in reference to railway cross-

ings over township roads. This specific finding of negligence exonerated defendant from any and all other charges of negligence pleaded against it." (Citing *Roberts v. Railway Co.,* supra.) (p. 162.)

In *Roberts v. St. Louis & S. F. Rly. Co.,* 136 Kan. 749, 759, 18 P. 2d 167, it was said:

"So the court has consistently and repeatedly held a specific finding of negligence is in effect a finding negativing existence of any other form of negligence, and a declaration by the jury that the general verdict is not based on any other form of negligence."

Other recent cases reaffirming the rule were *Bass v. St. Louis-S. F. Rly. Co.,* 143 Kan. 740, 744, 57 P. 2d 467; *Blackburn v. Security Benefit Ass'n,* 149 Kan. 89, 98, 86 P. 2d 536; *Torpey v. Kansas City Public Ser. Co.,* 149 Kan. 735, 738, 89 P. 2d 899.

Is the jury's finding of negligence a sufficient basis to support a judgment against defendant for damages. In 1937, so far as shown by the evidence, no device to enclose the middle universal joint had been devised or shown to be practical. Plaintiff's evidence did tend to show that after the accident he and his son-in-law did construct some sort of "bonnet" of sheet iron to cover the middle joint and yet permitted the take-off shaft to deliver its power as the outfit moved about the field. But that fact was insufficient to prove that defendant had been negligent in failing to equip the take-off shaft with such a device. In our time many sorts of machinery are used on farms, and while our farmers of necessity have to be self-taught mechanics to operate them, it is a novel idea that the manufacturers of such machinery can be held liable for the injuries farmers and farm workers sustain in their operation. It is a matter of common knowledge that injuries frequently occur in the operation of mowers, binders, threshers, tractors, corn shellers, hay loaders, and many sorts of geared tools. Are the manufacturers of such implements to be held liable for the hurts and bruises sustained by the users of these implements? Not many years ago, the automobile was started by a hand crank which often evinced a temperamental habit of "kicking" which resulted in a broken wrist of the operator. In time a safe device for starting automobiles was invented, but it could hardly be said that the early auto-manufacturer was culpably negligent in equipping his vehicles with hand cranks. Plaintiff alleged that he was unfamiliar with such an apparatus as a universal joint. But it was shown—indeed, by his own testimony—that he was a farmer of many years' experience; he had owned and operated sev-

eral tractors; he had owned and commercially operated a threshing outfit for a number of years and he did whatever needed to be done around the separator and the engine. All these machines had exposed cogwheels, chains, belts, moving and driving shafts. It seems clear that a farmer of such varied and extensive experience must be accredited with sufficient intelligence to know that a whirling shaft with an exposed universal joint was dangerous and to be avoided by the exercise of the simplest elements of prudence. In *Hertel v. Safety Folding Bed Co.*, 149 Mich. 223, 112 N. W. 712, the action was by an employee who was injured by coming in contact with a revolving shaft which delivered power from an engine to a saw used for cutting boards to be made into packing crates. The supreme court of Michigan reversed a judgment in his favor, holding that defendant was entitled to an instructed verdict. In the opinion it was said:

"He [plaintiff] was put in charge of the saw and did this work for at least two weeks before his injury. He was a young man of ordinary intelligence, almost 18 years old. From his acquaintance with this revolving shaft and his experience in going over and under it frequently when he worked as a helper, he must be held to have known the dangers incident to coming in contact with it. He says he knew that it was always in motion, and that he avoided touching it. The question of negligence on account of not giving warning as to dangers from the saw itself is not in the case. From the experience of the plaintiff, above related, while working as a helper and operator, he was informed of all the apparent risks of his surroundings." (p. 226.)

In *Goulding v. Eastern Bridge & Structural Co.*, 210 Mass. 52, 96 N. E. 71, plaintiff was injured by coming in contact with a revolving shaft while engaged in oiling some machinery. He testified:

"When I got on my knees . . . and as I was turning around to reach to put my hand on the plank, side of the belt . . . I just turned around on my right hip, and was going to put my foot down below, when I felt something pull, from the shafting; it was pulling right here (indicating the location of the right-hand pocket of overalls). I don't remember what happened after that." (p. 53.)

The trial court directed a verdict for defendant. On appeal the judgment was affirmed. The supreme judicial court said:

"This is a harsh case, but we are unable to distinguish it in principle from the numerous ones already decided in this commonwealth concerning injuries to employees caused by revolving shafting. The danger that the plaintiff's person or clothing or the waste in his overalls pocket might come in contact with the open and visible shaft, while he was getting down from the plank walk near by, was an obvious one, . . . the danger so apparent to one of

his age [18½ years old], capacity, and experience that in the exercise of reasonable care he must be presumed to know and appreciate it." (pp. 53, 54.)

Among the cases cited by appellee, all of which we have examined, is that of *Karsteadt v. Phillip Gross H. & S. Co.*, 179 Wis. 110, 190 N. W. 844, in which a judgment was affirmed against the seller of an electric washing machine, where the plaintiff had been injured when the sleeve of her dress caught in the unguarded cogwheels of the wringer and caused her to be drawn into the mechanism. If that decision was sound (and that seems a matter of fair debate) it may be distinguished from the instant case on two grounds. In the Karsteadt case it was held that the seller was negligent in failing to warn the plaintiff as to the dangers involved in operating the machine with the cogs of the wringer uncovered and unguarded. The opinion seems to show that a guard for the cogs had actually been devised. In the instant case the jury exonerated the defendant of any negligence in failing to warn. In the Karsteadt case, also, it would seem that plaintiff was attempting to operate the machine in the usual and customary manner when she was hurt. In the instant case plaintiff was attempting to reach the left-hand lever in a most unusual and awkward manner to save himself the very slight effort of remounting the tractor or stepping around to its left-hand side where the lever he desired to use would be easily and safely accessible. The same distinctions are obvious between the case at bar and another washing machine wringer accident case involved in *Altorfer Bros. Co. v. Green,* 236 Ala. 427, 183 So. 415.

As a general rule, a manufacturer or seller is not liable in negligence to one with whom he has had no contractual relation unless the article manufactured and sold is one which was inherently or imminently dangerous. See the multitude of cases so holding in the following annotations: 17 A. L. R. 672, 674; 39 A. L. R. 992; 63 A. L. R. 340; 88 A. L. R. 527; 105 A. L. R. 1502; 111 A. L. R. 1240; and 42 A. L. R. 1243.

The two leading cases upon the liability of manufacturers for defects which made the products dangerous are *MacPherson v. Buick Motor Co.*, 217 N. Y. 382, 111 N. E. 170; and *Huset v. J. I. Case Threshing Mach. Co.*, 120 Fed. 865.

In the Buick Motor Co. case, *supra,* Mr. Justice Cardozo wrote the opinion of the majority of the court holding the defendant manufacturer liable for injury caused by a defective automobile wheel, which defendant could have discovered by proper inspection. The

difference between the Buick Motor Co. case and the case at bar is, of course, that in that case the plaintiff did not know of the danger of the defective wheel.

In *Huset v. J. I. Case Threshing Mach. Co.*, supra, it was alleged that the manufacturer had knowingly covered up a defect in the machine and plaintiff was injured thereby. Judge Sanborn carefully limits his holding to such a case, thereby differing from the Buick Motor Co. case, *supra*. Of course, the plaintiff in the Huset case did not have a chance to observe the defect or danger in the machine as plaintiff did in the instant case.

The rule of the Buick Motor Co. case, *supra,* has been adopted by the American Law Institute ·in the restatement of the law of torts, but it will be noted that the rule has been carefully limited to exclude liability to one who knows of the defect or danger or is able to observe it. (See Restatement, Torts, sec. 388, also comment *f*, p. 1043, and comment *i*, p. 1047.)

The general rule as to a manufacturer's liability in negligence is stated in 24 R. C. L. 507, sec. 800, *et seq.* On page 510, sec. 803, the rule applicable to this case is stated:

"The ground of liability is the seller's superior knowledge of the dangerous characteristics of the article sold; and where it appears that the person injured was as fully cognizant of the peril as was the defendant seller or manufacturer there can be no recovery."

In many of the following cases it will be noted that the danger or defect was not as apparent to plaintiff as it was in the case at bar.

In *Berger v. Standard Oil Co.*, 126 Ky. 155, 103 S. W. 245, 11 L. R. A., n. s., 238, defective lubricating oil had been sold to plaintiff's employer. The defect in the oil could have been discovered by plaintiff if he had inspected the oil. Plaintiff used the oil in an engine, and a glass tube exploded, putting out plaintiff's eye. It was decided that plaintiff could not recover.

The case of *Birdsinger v. McCormick Harvesting Mach. Co.*, 183 N. Y. 487, 76 N. E. 611, 3 L. R. A., n. s., 1047, involved an accident of somewhat the same type as the one at bar. Plaintiff in that case purchased a corn-husking machine on which there were rollers sticking out into which the corn was to be thrust. After plaintiff had used the machine a month he attempted to clean the rollers and they started up suddenly, due to a broken part in the machine. Plaintiff's hand was mangled. The reasoning of the court is not especially applicable to the case at bar, since in that case the suit

was brought on the theory of warranty and the court held the warranty did not go to recompensing plaintiff for personal injuries. The L. R. A. case note, however, is pertinent and helpful.

In *Gibson v. Torbert*, 115 Ia. 163, 88 N. W. 443, 56 L. R. A. 98, defendant sold phosphorus to plaintiff at plaintiff's request without warning him of its dangerous qualities. *Held*, no recovery, since phosphorus was a well-known article.

In *Bragdon v. Perkins-Campbell Co.*, 87 Fed. 109, 66 L. R. A. 924, defendant had sold a side saddle to the husband of plaintiff. Plaintiff alleged that the side saddle was "unsafe, unsound and weak," and that she had suffered personal injury because of the saddle. No recovery was allowed.

In *White v. Oakes*, 88 Me. 367, 34 Atl. 175, 32 L. R. A. 592, the defendant was a dealer and not a manufacturer. He had sold a folding bed which turned out to be dangerous, and one who slept in the bed was severely injured. *Held*, no recovery, since plaintiff had as good a chance to discover defect as defendant.

In *O'Neill v. James*, 138 Mich. 567, 101 N. W. 828, an overcharged bottle of champagne cider exploded, injuring a bartender. Plaintiff knew the bottle was charged with gas and no recovery was allowed.

There seem to be a number of cases in Massachusetts involving shafts and revolving cogwheels as mentioned in *Goulding v. Eastern Bridge & Structural Co.*, supra. While those cited are master and servant cases, they do show that revolving shafts are considered patent dangers as to which no warning is necessary. The cases referred to are: *Ford v. Mount Tom Sulphite Pulp Co.*, 172 Mass. 544, 52 N. E. 1065 (opinion by Holmes, J.); *McKenna v. Gould Wire Cord Co.*, 197 Mass. 406, 83 N. E. 1113; *De Angelo v. Boston Elevated Railway*, 209 Mass. 58, 95 N. E. 102.

In *Crandall v. Stop & Shop, Inc.*, 288 Ill. App. 543, 6 N. E. 2d 685, plaintiff had purchased from defendant a spring-clamp contrivance for opening fruit jars. When plaintiff sought to use the device the spring clamp flew from the jar and struck her in the eye. The trial court gave her damages, but the court of appeals in a convincing opinion supported by apt and instructive citations reversed the judgment, holding that the "fact that an innocent article might under some extraordinary circumstances injure a person does not render article itself inherently and imminently dangerous so as to make seller liable."

Passing to the matter of the instructions given and refused, defendant is aggrieved by the trial court's refusal to give the jury certain requested instructions pertinent to the issues, one of which was that where there is a safe and usual way of doing some act it is the plaintiff's duty as a reasonably careful and prudent person to pursue that course rather than risk the danger of doing it a more hazardous way. Some such instruction should have been given. (*Carrier v. Railway Co.*, 61 Kan. 447, 59 Pac. 1075, and citations; *Railway Co. v. Rudolph*, 78 Kan. 695, 99 Pac. 224, and citations; *Jones v. A., T. & S. F. Rly. Co.*, 148 Kan. 686, 694-695, 85 P. 2d 15.) However, it was not a matter of dispute that there was a perfectly safe way to reach the lever which disengaged the power. Plaintiff could have mounted the tractor or stepped around it on the ground and thus reached the lever in perfect safety. Moreover, it cannot be denied that the method plaintiff did use to reach the left-hand lever was unusual—by leaning over the whirling take-off shaft while standing on the ground on the right-hand side of the outfit. Moreover, the jury's special findings, No. 2 and No. 3, clearly establish this matter; and those findings were in complete accord with the testimony and the evidential circumstances. Special finding No. 4 also established the fact that the power machinery could have been disengaged by a slight pressure on the right-hand knob on the tractor, and the fact that plaintiff preferred not to use it because of difficulty in making it reëngage the machinery is no reason for subjecting this defendant to damages for his unfortunate and distressing injuries.

Other questions are argued in the briefs of counsel, but what we have said above impels this court to hold that the judgment cannot stand. It is therefore reversed with instructions to enter judgment for defendant.